## UNITED STATES v. ARCHER.

### No. 6528–SD.

District Court, S. D. California, S. D.
June 26, 1943.

Charles H. Carr, U. S. Atty., of Los Angeles, Cal., and Robert Burch, Jr., Asst. U. S. Atty., of San Diego, Cal., for plaintiff.

John T. Holt and Fred Noon, both of San Diego, Cal., for defendant.

YANKWICH, District Judge (after stating facts as above).

■ Ordinarily, under accepted principles of law, no country may punish a crime committed extraterritorially by anyone but its citizens. Or, to put it conversely, the United States may punish its own nationals for doing something in a foreign country, which, if done by an alien, would not be an offense against the United States. United States v. Bowman, 1922, 260 U.S. 94, 95-98, 43 S.Ct. 39, 67 L.Ed. 149, makes this very plain. The case also makes the distinction between crimes which occur entirely beyond a country's territorial jurisdiction, and acts which although committed outside of its territorial jurisdiction, have a deleterious effect upon its sovereignty. The Court says: "Some such offenses can only be committed within the territorial jurisdiction of the government because of the local acts required to constitute them. Others are such that to limit their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home." 260 U.S. at page 98, 43 S.Ct. at page 41, 67 L.Ed. 149.

A later case, Ford v. United States, 1927, 273 U. S. 593, 47 S.Ct. 531, 71 L.Ed. 793, holds that a conspiracy in violation of the prohibition law could be committed by persons in England, although they never set foot in the United States, provided, of course, that an overt act was committed here. There the distinction already alluded to is drawn between the exercise of power over nationals and that over aliens. See Blackmer v. United States, 1932, 284 U. S. 421, 436, 52 S.Ct. 252, 76 L.Ed. 375. On the subject generally, see: Rose v. Himely, 1808, 4 Cranch 241, 279, 2 L.Ed. 608; The Apollon, 1824, 9 Wheat. 362, 6 L.Ed. 111; Wisconsin v. Pelican Ins. Co., 1888, 127 U. S. 265, 289, 290, 8 S.Ct. 1370, 32 L.Ed. 239; American Banana Co. v. United Fruit Co., 1909, 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047; Skiriotes v. Florida, 1941, 313 U.S. 69, 73, 74, 76, 61 S.Ct. 924, 85 L.Ed. 1193; Yenkichi Ito v. United States, 9 Cir., 1933, 64 F.2d 73; Restatement Conflict of Laws, Secs. 425, 426; Beale, Conflict of Laws, 1935, pp. 1349-1351; Sec. 4251, 30 Am.Jur. pp. 196, 197.

■ But there is another matter to be taken into consideration: Under international law, the United States may confer judicial powers on its consuls. To the exercise of such powers the Constitution does not apply. In re Ross, 1891, 140 U.S. 453, 11 S.Ct. 897, 35 L.Ed. 581.

There is a very significant phrase in 22 U.S.C.A. § 131. It reads: "At the post, port, place, *or within the limits of his embassy, legation, or consulate.*"

■ A consulate is, ordinarily, a building owned by the Government of the United States. And although it be not owned by the United States, it is a part of the territory of the United States of America. Therefore, the United States has authority to confer upon a consul, within the limits of the consulate or embassy, the power to administer an oath. To the extent of such power, the consul becomes a magistrate.

In 16 American Jurisprudence, Diplomatic and Consular Officers, Page 969, Sec. 18, it is said: "It has been held that an American consul in a foreign country is a magistrate within the meaning of a statute requiring that a deed be acknowledged by the grantor before a justice of the peace or a magistrate of the place wherein the grantor then resides."

■ The Congress having thus conferred on its consular representatives the right to administer an oath, to make it effective, it had to attach a punishment to its abuse. The Congress has given sanction to the oath by providing: "Every such oath, affirmation, affidavit, deposition, and notarial act administered, sworn, affirmed, taken, had, or done, by or before any such officer, when certified under his hand and seal of office, shall be as valid, and of like force and effect within the United States, to all intents and purposes, as if administered, sworn, affirmed, taken, had, or done, by or before any other person within the United States duly authorized and competent thereto". 22 U.S.C.A., § 131. First, the consul is given the power to take the oath. Then, the section declares that the oath shall be as effective as if given by a magistrate having similar powers, within the United States. And then, as a final provision, to make it effective, a penalty is provided by the clause reading "if any person shall willfully and corruptly commit perjury," etc. Therefore, if a person obtains an advantage in the United States, by securing, by means of an oath taken before a consul, a docu-

ment which has validity in the United States, be guilty of perjury, as that word is defined at common law, punishment is provided. If perjury has thus been committed, the offense is not committed in foreign territory. It consists in having corruptly secured an advantage, and in harming the United States. The fraud is not in the act, but in the result to be attained. It is a sound principle of criminal law that such result may be punished. To illustrate: Under the mail fraud statute, section 215 Federal Penal Code, 18 U.S.C.A. § 338, the mailing of the letter is the gist of the offense. It is necessary that fraud exist, but unless the postal establishment were involved, we could not punish the fraud. A person who has devised a scheme to defraud and who mails a letter in a foreign country, is guilty of the offense.

In Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989, the question arose whether a person who never was within the district could be brought into it from another state, to be charged with an offense not committed in the particular district. The court held that there may be prosecution in the district where the harm was done. The court said: "The appellant insists that the introduction of the new clause into the statute as re-enacted is not of material significance here. We are of a different opinion. That clause plainly provides for the punishment of the deviser of the scheme or artifice where he causes a letter in furtherance of it to be delivered by the mail according to the direction on the letter. This is done by way of enlarging the original definition of the offense, the clause dealing with the placing of such a letter in a mail depository being retained. Evidently Congress intended to make the statute more effective and to that end to change it so that, where the letter is delivered according to the direction, such wrongful use of the mail may be dealt with in the district of the delivery as well as in that of the deposit." Salinger v. Loisel, 1924, 265 U.S. 224, 234, 44 S.Ct. 519, 522, 68 L.Ed. 989. The court added that the Government had the right to choose to prosecute a defendant at the place where the harm was done or the place where the letter was delivered.

In United States v. Steinberg, 2 Cir., 1932, 62 F.2d 77, the question was whether mailing in a foreign country could be an offense against the United States. The Court said: "The only point of consequence is whether section 215 of the Criminal Code"—this being a mail fraud case—"covers the case of a letter posted by the accused in Canada, and received by the addressee in the United States. We regard this as concluded by Salinger v. Loisel [1924], 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989, where it was held that the accused might be indicted and tried at the place where the letter was received. The amendment of 1909, (35 Stat. 1130 [18 U.S.C.A. § 333]) created another crime; that of causing a letter to be delivered to a person within the United States by means of its mails. The section, in some aspects anyway, includes letters posted outside the United States, since it expressly makes it a crime to 'take or receive any such' from the mails, though so posted. In the light of this, it would be extravagant to suppose that the immediately following general language, creating the crime of 'causing' the letter to be delivered, was more limited. It is apparent that the two were intended to be complimentary. 'Such' refers to a letter used in execution of the scheme. It has long been a commonplace of criminal liability that a person may be charged in the place where the evil results, though he is beyond the jurisdiction when he starts the train of events of which that evil is the fruit." See Strassheim v. Daily, 1911, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735; Lamar v. United States, 1916, 240 U.S. 60 36 S.Ct. 255, 60 L.Ed. 526; Ford v. United States, 1927, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793.

The same question came up in Hartzell v. United States, 8 Cir., 1934, 72 F.2d 569. The indictment charged that the defendant, then in London, England, had caused, knowingly, a letter to be delivered by the Federal mails within the Northern District of Iowa, to effectuate a scheme to defraud investors. In determining that the indictment was sufficient, the Court said: "The sufficiency of the indictment was challenged by demurrer and motion to quash. It is urged that defendant could not be tried in the District Court of the United States for the Northern District of Iowa because he *at the time of the commission of the crime charged was in London, England.* The gist of the offense described in the statute is not the devising of a scheme to defraud. That in itself is not a crime under the laws of the United States. Such an act becomes criminal under the statute

only in the event the United States mails are used in carrying it into effect. * * * The indictment alleges that defendant caused to be delivered letters within the Northern District of Iowa. Under the statute, knowingly to cause a letter to be delivered by mail in accordance with the direction thereon for the purpose of executing a scheme to defraud is an offense separate from that of mailing the letter or causing it to be mailed for the same purpose, and, where the letter is so delivered as directed, the person who caused the mailing likewise causes the delivery at the place of delivery, and may be prosecuted in that district, although he was not present therein." Hartzell v. United States, 8 Cir., 1934, 72 F.2d 569, 576. After referring to Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989; Burton v. United States, 1906, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; and United States v. Steinberg, 2 Cir., 1932, 62 F.2d 77, the Court added: "In United States v. Steinberg, supra, the Circuit Court of Appeals of the Second Circuit held that one who had mailed a letter in Canada, which was delivered in the United States, was subject to prosecution under Section 338, 18 U.S.C.A. in the United States. We have held that, where a scheme to defraud or to obtain money by false pretenses was charged, when such scheme is criminally participated in by more than one individual, it constitutes of itself a conspiracy, and all who engage therein are equally guilty. * * * If defendant's associates knowingly participated in this alleged scheme, then they were guilty of a conspiracy, and all those participating in the furtherance of the scheme, whether within the United States or without, would be equally guilty. Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793. But if, on the other hand, defendant's aides were innocent, then the defendant would still be guilty of the commission of a crime within the jurisdiction of the lower court if while remaining in London he procured the commission of a crime through these innocent agents. The acts constituting the gist of the offense took place within the jurisdiction of the lower court." Hartzell v. United States, 8 Cir., 72 F.2d 569, 576.

■ It seems evident, therefore, that consular buildings in foreign countries, being a part of the territory of the United States, and under the control of the United States, the Congress has the right to punish as perjury any wilful falsification occurring on the property of the consulate. And any person who takes a false oath before a consul commits an offense, *not against the country where the consul is, but against the sovereignty of the United States*. The harm done is the attempt, through a false oath, to secure an advantage in the United States, by obtaining an affidavit which would have no validity, except for the statute.[1]

■ In the light of these principles, it is quite apparent that the Congress may punish lawfully an offense against the United States; in the taking of a false oath. The harm is to the sovereignty of the United States, in securing a benefit through perjury.

■ So that, whether we look at the act denounced by the statute from the standpoint of the control of the consulate as a part of the territory of the United States, or whether we look at it as an act punished for the harm it results in the United States, the Congress had the power to enact the statute. One who takes an oath before a consul of the United States in order to gain an advantage in the United States, whether he be a citizen or an alien, may be punished under this law, if it is proved that he committed perjury. His act being a fraud against the United States, deception practiced in order to secure a benefit—the Congress had the right to punish it as perjury. While this question does not seem to have been raised before, despite the fact that 22 U.S.C.A. § 131 has been in existence for almost one hundred years, it is quite clear to me, in the light of the principles I have discussed, that it is a valid enactment.

The demurrer will, therefore, be overruled.

---

[1] United States v. Goldsmith, 2 Cir., 1940, 108 F.2d 917, 918, lends support to these views. There, a person was prosecuted under 18 U.S.C.A. § 80, for causing aliens to present false statements to consular agents in order to receive admission as quota emigrants. The court held that a consul was an "agency of the United States", within the statutes, saying: "We think it clear, therefore, that the statute applies to a false statement made or caused to be made to a consular officer of the United States for the purpose of securing the issuance of a quota immigration visa to an alien".