UNITED STATES of America,
Plaintiff-Appellee,

v.

Steven MANN, Dennis McLaughlin, Marc Schulman and Bruce Cunningham,
Defendants-Appellants.

No. 79–5165
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 17, 1980.

Rehearing Denied May 27, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Dick DeGuerin, Houston, Tex., for defendants-appellants.

James R. Gough, John M. Potter, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GEE, RUBIN and POLITZ, Circuit Judges.

PER CURIAM:

Now well-established principles relating to stopping and searching U. S. vessels on the high seas are involved in the appeal of this criminal conviction after a jury trial on three counts, conspiracy to import marijuana, 21 U.S.C. § 963, conspiracy to possess marijuana with intent to distribute it, 21 U.S.C. § 846, and carrying firearms in the commission of a felony, 18 U.S.C. § 924(c)(2). We affirm the conspiracy convictions, but reverse the firearms conviction on the ground that it is not unlawful to carry firearms on the high seas.

The four defendants, Mann, McLaughlin, Cunningham, and Schulman were arrested aboard a U. S. registry vessel on the high seas off the Yucatan Peninsula. The vessel, Texas Star, a shrimper owned by a Texas corporation, Interstate Exploration, Inc., was travelling in the direction of the Texas coast when Coast Guard officers observed her from a helicopter, and noted her course and speed. They communicated with the crime information center in El Paso, Texas, but the center had no information regarding the vessel. However, she was headed toward Texas, was not rigged for shrimping, carried no shrimp nets, was not on waters usually fished for shrimp and the Coast Guard saw no one aboard engaged in fishing activity. Therefore, the Coast Guard officer aboard the helicopter's base vessel, the Valiant, decided to board the Texas Star, ostensibly for a safety and document inspection. The officer in charge of the boarding party told those aboard that he was checking for compliance with U. S. laws and whether there were guns aboard. Mann said there were weapons on the ship and produced an AR 15 semi-automatic rifle and a shotgun. The vessel's papers showed that 19 days previously she had been boarded by the Captain of the Port of Galveston and his inspection revealed that the pollution plaque was not in the engine room.

The Coast Guard officer went to the engine room to see whether the discrepancy had been corrected. En route he smelled what he thought to be marijuana. There were burlap covered bags in the room so he asked about their contents. Mann said the cargo was bauxite. The Coast Guard officer opened some of the bags, found marijuana and gave the defendants *Miranda* warnings. The Coast Guard party then searched the vessel and discovered 22,590 pounds of marijuana, two .22 caliber pistols, a shotgun and 980 rounds of ammunition.

Mann and McLaughlin thereafter made incriminating statements that were used against them at the trial. Seven issues are raised on appeal. We deal separately with defendants' challenges of the conspiracy convictions, the firearms convictions and the sentences of defendants Mann and McLaughlin.

I.

■ Defendants initially challenge the introduction of evidence seized from the Texas Star and incriminating statements made after the stop of the vessel. As defendants recognize in their brief, the Coast Guard has plenary authority to stop and board an American vessel on the high seas for a safety and document inspection as it did here. *See* 14 U.S.C. § 89(a); *United States v. Warren*, 578 F.2d 1058 (5th Cir. 1978) (en banc). The Texas Star was registered under the laws of the United States and was, therefore, subject to this authority.

■ Defendants argue, however, that the real reason for the search was to uncover contraband and that the Coast Guard's invocation of its section 89(a) safety and document check authority was pretextual. Even accepting that characterization of the stop and boarding, we need not determine whether it would distinguish this case from *Warren, supra,* for the district judge concluded that the facts known to the Coast Guard created a reasonable suspicion that the vessel was carrying contraband to the United States. We agree, and conclude that the stop and boarding was, therefore,

justified. *See United States v. Serrano*, 607 F.2d 1145 (5th Cir. 1979); *United States v. Kleinschmidt*, 596 F.2d 133 (5th Cir. 1979), cert. denied, —— U.S. ——, 100 S.Ct. 267, 62 L.Ed.2d 184.

■ Once the customs officer was aboard, the odor of marijuana in the engine room and the presence of weapons justified the Coast Guard in taking further steps to ascertain the nature of the cargo the vessel carried. *United States v. Warren*, 578 F.2d 1058 (5th Cir. 1978) (en banc); *United States v. Conroy*, 589 F.2d 1258 (5th Cir. 1979). Thus, whether the stop was intended to be only for safety and document inspection or whether it was designed to seek signs of illegal cargo, it was constitutional.

■ Defendants challenge the sufficiency of the evidence to support the conclusion that they intended to distribute the contraband cargo. The defendants were apprehended with over 22,500 pounds of marijuana in their possession, far too much for the personal consumption of four individuals. Having determined that defendants planned to import their cargo, the jury was entitled to infer from the facts before it that some plan had been made for its disposition. As we have previously noted "[t]he very size of a . . . cache can be sufficient to show intent to distribute . . ." *United States v. Rodriguez*, 585 F.2d 1234, 1246 (5th Cir. 1978), aff'd 612 F.2d 906 (5th Cir. 1980) (en banc); *United States v. Perry*, 480 F.2d 147 (5th Cir. 1973); *United States v. Mather*, 465 F.2d 1035 (5th Cir.), cert. denied, 409 U.S. 1085, 93 S.Ct. 685, 34 L.Ed.2d 672 (1972).

■ Defendants argue that, even though the evidence may support convictions for both conspiracies, there was but a single agreement and a double conviction violates double jeopardy. The argument was settled when this court en banc held that the conviction and punishment in one proceeding of a single conspiracy under two specific conspiracy statutes does not violate the double jeopardy clause. *See United States v. Rodriguez*, 612 F.2d 906 (5th Cir. 1980) (en banc) *But see id.* at 925 (Rubin, J., dissenting).

■ The defendants' final attack on the conspiracy convictions challenges the jurisdiction of the court because of the failure of the government to prove any overt act within the United States in furtherance of the conspiracy. It is not necessary for the government to allege or prove an overt act to obtain convictions under the controlled substance conspiracy statutes. *See United States v. Rodriguez*, 612 F.2d 906, 919 n. 37 (5th Cir. 1980) (en banc). The district court was not divested of jurisdiction of the offense because the government failed to do what it was not required to do. "The nation has long asserted the objective view, under which its jurisdiction extends to persons whose acts have an effect within the sovereign territory even though the acts themselves occur outside it." *United States v. Cadena*, 585 F.2d 1252 (5th Cir. 1978). When a conspiracy statute does not require proof of overt acts, the requirement of territorial effect may be satisfied by evidence that the defendants intended their conspiracy to be consummated within the nation's borders. *See United States v. Postal*, 589 F.2d 862, 886 n. 39 (5th Cir. 1979). Any other rule would place the United States in the anomalous position of being prohibited from apprehending and punishing those who plan to violate its laws until after the plan has taken fruit within its territorial boundaries. Thus, although Congress may have intended to strike at crimes and conspiracies begun outside the United States, it could not do so until they had some internal effect. Such a rule would not only make enforcement of our laws increasingly difficult, it would also conflict with the purpose of the objective view of jurisdiction. We, therefore, conclude that the district court had jurisdiction to try the defendants for a conspiracy aimed at violating United States law and intending effects in its territory even in the absence of proof of an overt act committed within this country.

## II.

Defendants challenge their convictions for unlawfully carrying firearms in the course of a felony. 18 U.S.C. § 924(c)(2). "Section 924(c)(2) is violated only if the act of carrying the firearm is in and of itself a violation of federal, state or local law." *United States v. Bower*, 575 F.2d 499, 501 (5th Cir. 1978). Defendants contend that there was no proof that their possession of weapons violated any federal, state or local law; we agree.

The government does not argue that carrying a weapon aboard a vessel on the high seas is itself illegal. To establish that carrying the firearms was unlawful it relies upon several provisions of both state and federal law.

■ None of the statutes we are referred to by the government makes illegal the conduct here—carrying a weapon on the high seas. Several of the statutes make the carrying of weapons within the territorial boundaries of a state illegal, e. g., Tex.Pen. Code § 46.02(a); L.S.A.–R.S. 14.95(A)(1); however, there is no proof that defendants had the weapons in their possession while they were in Texas and Louisiana. Had the defendants carried the weapons into Texas on their return, they would have violated federal prohibitions on the transporting and importation of firearms. The charge is not a conspiracy to violate the firearms statute, whatever the basis for such a charge might be, but possession of the firearms. The record contains no evidence that defendants' possession of the weapons seized from the Texas Star was unlawful. Therefore, the convictions under 18 U.S.C. § 924(c)(2) must be reversed.[1]

1. We note that, in his instructions to the jury, the judge neglected to charge that the carrying of the firearm must be unlawful. Although the unlawfulness of the defendants' possession of firearms might be viewed as a question of law, *United States v. Rivero*, 532 F.2d 450, 458–59 (5th Cir. 1976), in this case a resolution of the question would depend upon the presence of facts establishing that the defendants were carrying the firearms while inside the United States. We have concluded that there was insufficient evidence to support such a conclusion. However, even if the evidence in the record could support that inference, the charge to the jury did not require them to find such facts before returning a verdict of guilty. Thus, it is likely that the jury returned a guilty verdict on Count III on the basis of facts which did not

## III.

At the sentencing hearing, the judge stated that he believed that Schulman and Cunningham had no knowledge of the identity of the backers of the drug scheme, and he sentenced them to twelve months with a six-year special parole term. The judge further stated that he did not believe the testimony of Mann and McLaughlin that they had no useful information to provide to the government and did not know of the identity of their financial backers, and he found them neither repentant nor determined to avoid similar action in the future. He then stated his intention to impose the maximum penalty of five years on Counts 1 and 2 and ten years on Count 3, running consecutively for a total of twenty years and a $30,000 fine. However, the judge invited their attorney to move for reduction of sentence.

Following the filing of the motion, and counsel's argument that punishment cannot be enhanced for refusal to provide information, the court reduced the sentences of these two defendants to five years on Count 1, five years on Count 2, and seven and one half years on Count 3, all sentences to run concurrently.

■■■■■ While a court may not punish a defendant who refuses to provide information to the government, *see United States v. Wright*, 533 F.2d 214, 216 (5th Cir. 1976), it may consider a number of factors including truthfulness. *See United States v. Grayson*, 438 U.S. 41, 50–51, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978); *United States v. Richardson*, 582 F.2d 968, 969 (5th Cir. 1978). The reduction of the original sentence reflects an appropriate reconsideration of the judge's initial resolve and an elimination of the possible presence of improper motive. The fact that the two other defendants received lesser sentences is irrelevant. *See United States v. Hayes*, 589 F.2d 811 (5th Cir. 1979). Mann and

establish that the defendants were *unlawfully* carrying firearms. We cannot assume that the jury determined factual issues against the defendants which, on the charge given, it did not need to determine before returning a verdict.

McLaughlin appeared to the district judge not only to be the masterminds of the criminal scheme but also to be less truthful and less repentant than their confederates. The assessment of a lengthier prison term for those two was within his discretion.

Accordingly, the convictions are RE-VERSED on Count 3 and AFFIRMED on all other counts. This case is REMANDED to the district court for resentencing.