UNITED STATES of America, Plaintiff,

v.

Cesar JAMES–ROBINSON, et al., Defendants.

No. 81–47–Cr–EBD.

United States District Court, S. D. Florida, S. D.

June 11, 1981.

---

Asst. U. S. Atty. Richard Kuniansky and Sp. Asst. U. S. Atty. Carol Wilkinson, Miami, Fla., for plaintiff.

Robert Moore and Marc Cooper, Miami, Fla., for defendant.

## CORRECTED ORDER

EDWARD B. DAVIS, District Judge.

The question presented here is whether the United States overreaches the international law of jurisdiction when it tries to prosecute foreign crewmen of a stateless ship stopped on the high seas 400 miles from the U.S. when there is no allegation, and at trial there would be no proof, that the controlled substance found on the ship was ever intended to be distributed in this country. The defendants are charged with violation of a wide-ranging statute which makes it unlawful for any person on board a vessel subject to the jurisdiction of the United States on the high seas to possess a controlled substance with the intent to distribute the substance. 21 U.S.C.A. § 955a(a) (West.Supp.1981).[1]

This matter is before the Court on a motion to dismiss the Indictment. Section 955a is part of recent legislation popularly known as the "Marijuana on the High Seas Act." The law took effect September 15, 1980, see [1980] U.S.Code Cong. & Ad.News, 94 Stat. 1160, and its validity as applied to the factual situation here has yet to be decided by an appellate court.

---

1. Section 955a(a)

It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States on the high seas, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

A " 'vessel subject to the jurisdiction of the United States' includes a vessel without nationality." 21 U.S.C.A. § 955b(d) (West.Supp. 1981).

Section 955a on its face proscribes *all* possession with the intent to distribute, regardless of where that distribution might occur. A similar statute, 21 U.S.C. § 841(a) (1979), has been narrowed by a recent line of cases which held that the intent to distribute *in the United States* must be shown. *United States v. Ricardo*, 619 F.2d 1124, 1129 (5th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 789, 66 L.Ed.2d 607 (1980); *United States v. Mann*, 615 F.2d 668, 671 (5th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981); *United States v. Baker*, 609 F.2d 134, 139 (5th Cir. 1980); *cf. United States v. Columba-Colella*, 604 F.2d 356, 358 (5th Cir. 1979) (no jurisdiction over British citizen who received stolen American car in Mexico). Following that reasoning, this Court concludes that it does not have subject matter jurisdiction in these circumstances unless the government can allege, and prove at trial, that the defendants caused, or intended to cause, some kind of effect in or to the United States.

## I. STIPULATED FACTS

At a hearing on the motion to dismiss, the United States and the nine defendants before the Court [2] agreed that the following facts applied for the purposes of the motion: 1) the defendants are citizens of Colombia; 2) the ship on which they were arrested was a "vessel without nationality" as defined by § 955b(d); 3) the vessel, the "Island Merchant," was stopped by the U.S. Coast Guard January 27, 1981; 4) at the time of the stop, the ship was on the high seas as defined by § 955b(b), at a position of 21° 18′N, 75° 20′W, more than 400 miles from the continental United States; [3] 5) from the time the Coast Guard first made contact with the vessel to the time of the stop, the Island Merchant was on a heading which would take her to Nassau, Bahamas; 6) the United States would not attempt to prove at trial that the defendants had the intent to distribute a controlled substance

in the United States; 7) the government would likewise not attempt to prove that the marijuana found on the Island Merchant was intended to be offloaded and then distributed in the United States.

The defendants argued that this Court does not have subject matter jurisdiction under the international law of jurisdiction, and also claimed that § 955a was unconstitutionally vague. The government contended that § 955a allows the drug arrests of citizens of foreign countries on stateless vessels found on the high seas anywhere in the world. Section 955a(a), the government said, does not require the intent to distribute in the United States, an arrest in or near the waters legally controlled by this country, or any other special circumstances from which an intent to distribute here might be inferred or a nexus with the U.S. shown. It is the position of the United States that the protective principle of international jurisdiction authorizes this country, and this Court, to assume subject matter jurisdiction.

Because there is agreement as to the operative facts, the Court determines that the motion to dismiss is capable of determination without a trial of the general issue and thus the issues raised are in an appropriate procedural posture for resolution. Fed.R.Crim.P. 12(b); *see* 8 Moore's Federal Practice ¶ 12.03[1] nn.8–9.

## II. LEGISLATIVE HISTORY

The congressional intent behind the wording of § 955a(a) is crucial. This Court does not have subject matter jurisdiction unless Congress intended to reject the international law of jurisdiction [4] in the circumstances present here.

■■■ International law has long been recognized as being part of our law. *The Paquete Habana*, 175 U.S. 677, 700, 20 S.Ct. 290, 299, 44 L.Ed.2d 320 (1900); *see Zenith Radio Corp. v. Matsushita Electric Industri-*

---

**2.** The named defendant failed to appear and his bond was ordered forfeited.

**3.** The Island Merchant was closer to the territory of at least seven other countries than it was

to the United States. *See, e. g.,* Cosmopolitan World Atlas 65 (1972).

**4.** For a discussion of the limitations imposed by international law, see Section III, *infra*.

*al Co.,* 494 F.Supp. 1161, 1178–79 (E.D.Pa. 1980). It applies even in the absence of a specific treaty, and must be ascertained and applied by the Court when necessary. *Habana,* 175 U.S. at 700, 20 S.Ct. at 299. An American statute may override international law, but only when Congress has expressed the clear intent to supercede the existing law of nations. *E. g., Murray v. The Schooner Charming Betsey,* 6 U.S. (2 Cranch) 64, 118, 2 L.Ed. 208 (1804); *see Cook v. United States,* 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641 (1933) (statute interpreted to *conform* with prior treaty); *Zenith,* 494 F.Supp. at 1179; Restatement (Second) of the Foreign Relations Law of the United States §§ 3(3), 145(1).

Congress intended for the Marijuana on the High Seas Act to give the "maximum prosecutorial authority permitted *under international law."* S.Rep.No.855, 96th Cong., 2d Sess. 2 (1980) (emphasis added). Congress manifested a policy of complying with international law throughout its consideration of § 955a. *See* H.R.Rep.No.323, 96th Cong., 1st Sess. 9 (1979) (jurisdiction under international law; amendments to eliminate conflict with international law); *id.* at 11 (§ 955a(a) designed to prohibit all acts which the U.S. can reach under international law).

■ Congress has the power to define and punish felonies committed on the high seas. U.S.Const. Art. I, § 8, cl. 10. In enacting § 955a, however, Congress intended to limit the exercise of that power so that the new statute would conform to the international law of jurisdiction.

During deliberations on the proposed law, the Department of Justice opposed the bill because of the absence of any provision which would require a showing of knowledge or intent to cause an effect in or to the U.S. The Department's legislative liason wrote the chairman of the House Committee on Merchant Marine and Fisheries, and said that the absence:

raises questions of criminal jurisdiction over foreign nationals and foreign vessels. Under international law, a state *does not have jurisdiction* to proscribe the conduct in question. . . . To have jurisdiction over ... distribution of a controlled substance by a non-U.S. citizen on foreign vessels on the high seas, the United States *must show an actual or potential adverse effect within its territory.* It is doubtful that such an adverse effect could be demonstrated in the absence of intent to import the substance into the United States or knowledge that it will be imported.

Letter from Patricia M. Wald, Assistant Attorney General (April 11, 1979), *reprinted in* H.R.Rep.No.323, 96th Cong., 1st Sess. 16 (1979).[5] The Department of Justice opposed the bill because it was doubtful the U.S. would have jurisdiction where no adverse effect on the country was required, and suggested that the bill be amended to require that a defendant have the knowledge or intent that the controlled substance would be imported into the United States. *Id.* at 18. The bill was amended in several ways, but there was no amendment inserting a requirement of knowledge or intent that distribution of a controlled substance would affect the United States in any way. *Compare id.* at 15–16 (subsection 1(a)) *with* 21 U.S.C.A. § 955a(a).

There is no sign that Congress intended to reject the application of international law when it enacted § 955a(a). Rather, the converse is true; the intent to abide by international law pervades the legislative history of the Marijuana on the High Seas Act. Since Congress did not reject application of the law of nations, the Court must determine whether the Indictment before it is proper under the international law of jurisdiction.

---

**5.** The letter was specifically referring to foreign nationals on foreign-registered vessels, but § 955a(a)'s defect is the same when applied to foreign citizen crew-members of stateless ships. While "any nation may extend its authority over a stateless *ship,"* H. Meyer, The Nationality of Ships 323 (1967) (emphasis added), the issue before the Court is not of such an *in rem* nature. Rather, the issue is whether the U.S. may extend its authority over the foreign citizen *crewmembers* of such a stateless ship.

## III. INTERNATIONAL LAW

The international law of jurisdiction is relevant here because Congress intended it to apply in § 955a cases, and because the arrests in this case took place on the high seas, an area not always subject to the laws of the United States. This Court does not have subject matter jurisdiction unless such jurisdiction is permitted under some principle of international law.

■■■ The Indictment here must stand or fall on the protective principle of the international law of jurisdiction. Other theories of jurisdiction do not apply.[6]

The protective principle allows a nation to take jurisdiction only when conduct of a foreigner threatens the state's security or governmental functions. See Restatement § 33. Protective principle jurisdiction is proper when proscribed conduct has a "potentially adverse effect" upon a sovereign. *Id.*, Comment c; *see United States v. Pizzarusso*, 388 F.2d 8, 10–11 (2d Cir. 1967), *cert. denied*, 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968); *United States v. Layton*, 509 F.Supp. 212, 216 (N.D.Cal.1981) (alternate holding); *United States v. Egan*, 501 F.Supp. 1252, 1257 (S.D.N.Y.1980) (alternate holding); *United States v. Keller*, 451 F.Supp. 631, 635 (D.P.R.1978) (alternate

holding); *aff'd on theory of territorial jurisdiction sub nom. United States v. Arra*, 630 F.2d 836 (1st Cir. 1980); Note, 39 La.L. Rev. 1189, 1190 (1979) (all quoting Comment c); *cf. United States v. Columba-Colella*, 604 F.2d 356, 358 (5th Cir. 1979) ("directly interfere" with governmental operations); *United States v. Cadena*, 585 F.2d 1252, 1258 n.6 (5th Cir. 1978) (dictum) ("threatens" security); *United States v. King*, 552 F.2d 833, 851 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977) (dictum) ("some injury to the sovereign integrity" of the U.S.); *United States v. Birch*, 470 F.2d 808, 811 (4th Cir. 1972) (injury to national interest), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973); *Rocha v. United States*, 288 F.2d 545, 549 (9th Cir.) (alternate holding) (attack on sovereignty), *cert. denied*, 366 U.S. 948, 81 S.Ct. 1902, 6 L.Ed.2d 1241 (1961). *See also United States v. Baker*, 609 F.2d 134, 138 (5th Cir. 1980) (dicta) (protective principle not defined; ship's location nine miles off Florida indicated intent to distribute in U.S.); *Marin v. United States*, 352 F.2d 174 (5th Cir. 1965); *United States v. Daniszewski*, 380 F.Supp. 113, 116 (E.D.N.Y. 1974) (security of citizens).

■■ A review of the relevant caselaw shows that application of the protective

---

**6.** International law recognizes five possible theories of jurisdiction, the objective territorial, national, protective, universal, and passive personality principles. *Rivard v. United States*, 375 F.2d 882, 885 (5th Cir.), *cert. denied*, 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181 (1967); *see* Restatement (Second) of Foreign Relations Law of the United States §§ 10–36 [hereinafter cited as Restatement].

The government does not argue that the objective territorial principle applies. That principle is operative only when the conduct of foreign nationals outside a country causes an effect within the country seeking jurisdiction. *See Strassheim v. Daily*, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911). The principle has recently been defined to allow subject matter jurisdiction when the defendants only *intended* to cause an effect here, *United States v. Ricardo*, 619 F.2d 1124 (5th Cir. 1980); *United States v. Baker*, 609 F.2d 134 (5th Cir. 1980), or when an overt act was intended to take place here in furtherance of an international conspiracy. *Baker*, 609 F.2d at 138; *Rivard*, 375 F.2d at 886–88. The territorial principle cannot give jurisdiction in the present case

because the United States has specifically declined to assert that the acts of the defendants on the high seas were intended to cause an effect here.

The nationality principle may be invoked when the defendants are citizens of the prosecuting country, or the acts involve a vessel of the sovereign, Restatement §§ 26–29, and is obviously inappropriate here.

Any nation may take universal jurisdiction when a heinous crime is involved. This principle has been used to justify jurisdiction for the proscription and prosecution of piracy. Restatement § 34. Drug trafficking is not recognized as being subject to universal jurisdiction. *Id.*, Reporters' Note 2.

Passive jurisdiction exists in theory over the perpetrators when a country's citizen is the victim of a crime, but this concept has been generally rejected as a basis of jurisdiction in Anglo-American law. *Id.*, § 30(2); *see Zenith*, 494 F.Supp. 1179 n.38. *But see United States v. Layton*, 509 F.Supp. 212, 216 n.5 (N.D.Cal.1981) (alternate holding) (passive jurisdiction found over defendant accused of killing U.S. congressman in Guyana).

principle is limited to situations where there is at least a potentially adverse effect on the sovereign's security or its governmental functions. The territorial principle, on the other hand, is applied when there is an effect (intended or realized) within the physical boundaries of the sovereign's territory.

There must be some specific effect on the national security or governmental functions of the United States, or at least a potentially adverse effect, before the protective principle allows jurisdiction. *United States v. Columba-Colella*, 604 F.2d at 358–59. All cases which have invoked the protective principle were actions where there was a demonstrable effect on the United States *in particular*. Never in a published opinion of an American court has a potential generalized effect, which might or might not also be an effect on the United States, been found sufficient to invoke the protective principle of international law.[7]

■ *Columba-Colella* shows that the court does not have subject matter jurisdiction when the government overreaches the limitations imposed by the international law

of jurisdiction. In that action, a British citizen received a stolen American automobile in Mexico. 604 F.2d at 357–58. Since the defendant had not conspired to effect the car's theft, nor done anything else touching the United States, his actions were insufficient to invoke territorial jurisdiction. *Id.* at 358. Use of the protective principle was also rejected because the defendant had done nothing which would potentially threaten the security of the United States or interfere with an American governmental function. *Id.* at 359. Thus, the court found there was no subject matter jurisdiction.

The modern drug cases which found jurisdiction under the protective principle—*Baker, Egan, Cadena* and *Keller/Arra*—all involved allegations of attempted or accomplished importation of marijuana into the United States. Specific effects sufficient to find territorial jurisdiction existed in those actions. Protective principle jurisdiction was also present because the unlawful importation of controlled substances into the United States has the specific effect of evading an important governmental function.[8]

---

**7.** U.S. courts have not considered the protective principle frequently in criminal cases. The above cases represent all references to the protective principle found in published opinions.

Dicta in *United States v. Egan* suggested that the drug problem in America represented a sufficient threat to national security to invoke the protective principle of jurisdiction. 501 F.Supp. at 1258; *see Daniszewski*, 380 F.Supp. at 115–16. Those decisions considered the effect of importation specifically into the U.S., which is *not* alleged in the case at bar. This Court agrees that unlawful drugs have created major problems in the United States, with a consequent effect on national security being a possible result. But that is not alleged and the government says it will not prove that here. The fatal problem with this indictment is that it does not allege any specific effect to this country.

The national security/protective principle analysis for jurisdiction in drug cases was recently advocated in a work largely based on the application of the protective principle in *United States v. Keller*, 451 F.Supp. 631 (D.P.R. 1978). Note, 39 La.L.Rev. 1189 (1979). After the article's publication, Keller was affirmed solely on the principle of territorial jurisdiction and without discussion of the protective princi-

ple. *United States v. Arra*, 630 F.2d 836 (1st Cir. 1980).

**8.** *King* and *Daniszewski* found that 21 U.S.C. § 959 (1979) could be applied to defendants acting outside the United States. That statute specifically requires "U.S. intent." *King* found that the nationality and territorial principles applied for the prosecution of U.S. citizens accused of scheming to import heroin into the U.S. 552 F.Supp. at 851–52. *Daniszewski* did the same, but labeled its holding as based on the protective principle, while citing authority on the territorial principle. 380 F.Supp. at 115–16.

*Birch, Pizzarusso, Rocha* and *United States v. Archer*, 51 F.Supp. 708 (S.D.Cal.1943), were all actions involving falsifications to gain entry into the United States. All defendants gained such entry, thereby causing an effect which would have made their conduct subject to the territorial principle. Only the *Pizzarusso* court considered the fact that the defendant did enter the U.S. to be irrelevant. 388 F.2d at 10. The crimes charged in these cases were done with the intent and effect of directly interfering with an important governmental function, the control of immigration.

*Archer* did not mention the protective principle, but its application was discerned some

### IV. CONCLUSION

In the case before this Court, there is no allegation of an effect on the national security or governmental functions of the United States. Beyond that, there is no allegation of any effect whatsoever in this country. These factors alone might render the Indictment defective for failure to allege an essential fact. *See* Fed.R.Crim.P. 7(c)(1). The question before the Court, however, is whether the stipulated facts could possibly show an effect on our sovereignty sufficient to allow protective principle jurisdiction. That boils down to whether, as a matter of law, the presence of foreign crewmen on a stateless ship carrying marijuana on the high seas 400 miles from the United States *by definition* represents a threat to our national security or to our government's functions. It does not. More than that must be alleged and proven.

There could be a different result if the controlled substance in question is found near U.S. territory, or if the shipment is bound for the United States, or if the foreign defendants know or intend that their illegal cargo will be distributed in this country. Subject matter jurisdiction may exist in those circumstances.[9]

█ The Court holds today only that it is without subject matter jurisdiction to consider charges brought against foreign nationals on a stateless vessel carrying a controlled substance, when the ship was found hundreds of miles from American shores and there is no accusation that the defendants intended to distribute the contraband in the United States or cause any other effect here.

The judicial interpretation of a statute similar to § 955a indicates what must be shown for there to be subject matter jurisdiction. That law, 21 U.S.C. § 841(a) (1979), prohibits possession of controlled substances with the intent to distribute. It does not specify that distribution in the United States must be intended. That law was saved from oblivion when courts found that Congress only intended to make distribution *in the U.S.* illegal. *United States v. Ricardo*, 619 F.2d 1124, 1129 (5th Cir. 1980); *United States v. Mann*, 615 F.2d 668, 671 (5th Cir. 1980); *United States v. Baker*, 609 F.2d 134, 139 (5th Cir. 1980); *cf. United States v. Postal*, 589 F.2d 862, 885 (5th Cir. 1979) (conspiracy under 21 U.S.C. § 963).

The finding of "U.S. intent" allowed the application of the objective territorial principle of jurisdiction in those cases, although the implied requirement of effect on the U.S. was found on occasion "not without some conceptual difficulty ...." *Baker*, 609 F.2d at 139. Whether, given the legis-

---

years later. *United States v. Rodriguez*, 182 F.Supp. 479, 491 (S.D.Cal.1960), *aff'd sub nom. Rocha v. United States*, 288 F.2d 545 (9th Cir. 1961).

In *United States v. Baker*, 136 F.Supp. 546 (S.D.N.Y.1955), the court found it had no power to try an alien who was accused of falsely swearing a visa application executed in Canada. The defendant did not enter the United States, and thus did not create an adverse effect on this country. The action is occasionally cited as an example of the protective principle's strictures, *e. g., Pizzarusso*, 388 F.2d at 11, but that concept was not explicitly relied on in the opinion.

In *Layton*, the murder of a U.S. congressman in Guyana was found to have a sufficiently adverse effect on American national security and governmental functions to allow the use of protective principle jurisdiction. 509 F.Supp. 216. Jurisdiction was also found on the objective territorial, national and passive principles. *Id.*

Two recent civil actions have also considered application of the protective principle. *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 494 F.Supp. 1161 (E.D.Pa.1980); *Schoenbaum v. Firstbrook*, 268 F.Supp. 385 (S.D.N.Y. 1967). The *Zenith* court ultimately concluded that it had jurisdiction because of the objective territorial principle. 494 F.Supp. 1189. *Schoenbaum*, which involved allegations of Canadian securities fraud, found no jurisdiction on either principle, and granted the defendants summary judgment. 268 F.Supp. 393, 397.

**9.** Two motions to dismiss on rather similar facts as the case at bar have been denied in this District with written orders. *United States v. Angola*, 514 F.Supp. 933 (S.D.Fla., Order Denying Motions to Dismiss filed May 14, 1981); *United States v. Pauth-Arzuza*, No. 80–577–Cr-CA (S.D.Fla., Order Denying Motion to Dismiss filed Apr. 20, 1981; Order on Motion for Reconsideration filed Apr. 24, 1981). *See also id.* (Order re: Status of the Vessel "Four Roses" filed Apr. 28, 1981).

lative history and specific language of § 955a, a similar "U.S. intent" can be found in § 955a(a), is a question for another day, and for another indictment: one which charges some intent to affect the United States in some fashion.

Some manner of nexus with some interest of the United States is essential to give this Court subject matter jurisdiction over any prosecution for possession of a controlled substance with intent to distribute.[10] That effect might come from the involvement of U. S. citizens, territory or vessels, from a destination (intended or realized) in the United States, or from some threat to the national security or governmental functions of the United States. Under international law, which Congress specifically intended to apply here, this Court does not have subject matter jurisdiction to hear a prosecution of foreign citizens for a drug offense when the defendants were found on the high seas in a vessel without nationality, unless it is alleged, and later proved, that there was a detectable connection between their conduct and the United States of America.

It is entirely possible that the required nexus can be inferred from indirect evidence such as the location and heading of a ship on the high seas, *see e. g., United States v. Ricardo*, 619 F.2d 1124 (5th Cir. 1980), size of shipment, *see, e. g., United States v. Egan*, 501 F.Supp. at 1260, documents or inscriptions found on the vessel, or other relevant evidence. The Court today deals only with an indictment which alleges no such connection and a government which says it need prove no such nexus.[11]

It is therefore

ORDERED AND ADJUDGED that the motion of defendants Robinson-Ibarquen, Demoya-Ballesteros, Santana-Archbold, Bryan-Taylor, Bent, Howard, Castro-Melo, Henao-Azal and Archbold-Robinson to dismiss the indictment is GRANTED, for lack of subject matter jurisdiction. It is further

ORDERED AND ADJUDGED that this Court's Order of June 9, 1981, is hereby withdrawn and this Order, containing minor corrections, is hereby substituted *nunc pro tunc.*

---

**10.** To act without jurisdiction would be a denial of due process. U.S.Const. Amend. V. To that extent, the § 955a(a) provisions at issue here cannot be constitutionally applied under the present circumstances to the defendants before this Court.

**11.** Prosecutions of U.S. citizens, or crewmen on a U.S. flag vessel, or persons found aboard a ship in waters legally controlled by the United States, or crewmen who were intentionally participating in the attempted distribution of a controlled substance which would end up in the United States, are not at issue here. Also not at issue is the power of the United States to stop, search, and seize a stateless vessel carrying controlled substances on the high seas.