**UNITED STATES of America,**

v.

**Carlos NEWBALL, et al., Defendants.**

**No. 81 CR 436.**

United States District Court,
E. D. New York.

Oct. 22, 1981.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y. (Leonard Rosenblatt and Carol Schachner, Asst. U. S. Attys., of counsel), for the U. S.

Rodriguez, Urbano & Sanford, Coral Gables, Fla. (Oscar S. Rodriguez, Coral Gables, Fla., of counsel), David A. DePetris, Flamhaft, Levy, Kamins & Hirsch, New York City (Stephen Flamhaft and Barry Kamins, of counsel), for defendants.

NICKERSON, District Judge.

The indictment in this case charges in Count One that all twelve defendants, foreign nationals who were crewmembers of a fishing boat seized by the Coast Guard, intentionally possessed with intent to distribute twelve (12) tons of marijuana while on board "a vessel of the United States" known as the "Lucky Louise" and also known as the "Coral I," on the high seas, in violation of 21 U.S.C. § 955a(a). Count Two charges that two of the defendants, Carlos Newball and Ignacio Parentes-Herrera, willfully attempted to destroy a "vessel of the United States" on the high seas in violation of 18 U.S.C. § 2273.

In pertinent part Section 955a(a) of Title 21, cited in Count One, makes it unlawful for any person on board a vessel "of the United States" or "subject to the jurisdiction of the United States" on the high seas knowingly or intentionally to possess with intent to distribute a controlled substance. Section 2273 of Title 18, cited in Count Two, in pertinent part, makes it a crime for a person on the high seas willfully to attempt to destroy a vessel "of the United States."

The defendants have moved to dismiss the indictment. They contend that the boat was not a vessel "of the United States" within the meaning of either of the foregoing sections and was not a vessel "subject to the jurisdiction of the United States" as that term is used in 21 U.S.C. § 955a(a). They further argue that if the sections do apply they violate due process, exceed Congress' enumerated powers, contravene the Convention on the High Seas, 1958, and deny equal protection by impinging on rights guaranteed by the first, fourth, fifth and ninth amendments to the United States Constitution.

Much of the defendants' argument is premised on the assumption that the boat is a Honduran vessel. This court holds that the boat is a "vessel of the United States" within the meaning of both 21 U.S.C. § 955a(a) and 18 U.S.C. § 2273, and that those sections are not beyond the power of Congress.

## I

On July 18, 1981 crewmembers of the United States Coast Guard cutter Cape Fairweather boarded a 70 foot fishing vessel bearing the name "Coral I" approximately sixty miles south of Nantucket. The boarding party found numerous bales of marijuana, later determined to be in excess of 22,000 pounds. The master of the vessel, defendant Carlos Newball, produced for the Coast Guard crewmembers documentation purporting to show that the vessel was owned by Henry Suarez-Ibarra, apparently a resident of Honduras, and had been registered as a Honduran vessel since August 13, 1980.

The boarding party thereupon withdrew, and in accordance with maritime practice, American authorities attempted to secure from the Honduran government permission to seize the vessel. The Cape Fairweather also endeavored to verify the identity of the vessel with Coast Guard agencies by means of the number 553379 inscribed on the vessel's mainbeam. During this interval the Coast Guard cutter trailed the vessel out to sea.

On the next day, July 19, 1981, the Coast Guard crewmembers allegedly observed the fishing vessel begin to list and members of its crew spread a liquid about it, board a small launch, and set the vessel on fire. The Coast Guard then reboarded the vessel, put out the fire, and seized the vessel and its crew, bringing them to Montauk.

The Coast Guard check into the identity of the vessel revealed that a United States Certificate of Registry had been issued on January 24, 1981 to Lawrence Griffith, a citizen of the United States, for a 70 foot vessel having the mainbeam number 553379 and called "Lucky Louise." The Coast Guard General Index or Abstract of Title for vessel number 553379 indicated that the vessel had been conveyed to Lawrence Griffith by bill of sale on December 24, 1980 by Ernesto Vildostegui, Jr., to whom the vessel had been conveyed on April 4, 1979 by its original owner.

According to the Abstract of Title, the vessel was still owned by Griffith when it was seized and had never been owned by Henry Suarez-Ibarra. Furthermore, the United States Maritime Administration informed the United States Attorney that it had no record of having received a request for permission to transfer the "Lucky Louise" to a foreigner, although such permission is required by United States shipping laws.

Although the documentation found on the vessel when it was seized purported to show that it had a Honduran registry, a certified statement dated August 10, 1981 by Ruben Humberto Montoya, Commander-in-Chief of the Honduran Navy, stated that he had found no record of registration for the vessel and that "the government of Honduras has concluded that the Coral I is not a Honduran registration vessel."

After the seizure Coast Guard officials confirmed that the vessel's mainbeam number is 553379, the number of "Lucky Louise." Moreover, according to the government the name "Coral I" appeared to have been painted on the vessel recently and a stencil of that name was found on board. The government has thus made a *prima facie* showing that the vessel on which the defendants and the marijuana were found is the "Lucky Louise."

## II

Both counts of the indictment charge the defendants with committing unlawful acts on board a "vessel of the United States." The term "vessel of the United States" for the purposes of 21 U.S.C. § 955a(a) alleged in Count One is defined in 21 U.S.C. § 955b(c), in pertinent part, as

any vessel documented under the laws of the United States, . . . or owned in whole or in part by the United States or a citizen of the United States, . . . unless the vessel has been granted nationality by a foreign nation in accordance with article 5 of the Convention on the High Seas, 1958.

For purposes of 18 U.S.C. § 2273 alleged in Count Two the same term is defined in 18 U.S.C. § 9, in pertinent part, as "a vessel belonging in whole or in part to the United States, or any citizen thereof."

Defendants say that the document found on board shows that the vessel is registered by the Honduran government and owned by a Honduran resident and consequently not a "vessel of the United States." The government contends that the vessel is "documented under the laws of the United States" and "owned" by a citizen of the United States, and is therefore a "vessel of the United States" within the meaning of 21 U.S.C. §§ 955a(a) and 955b(c). The government also contends that the vessel is one "belonging" to a citizen of the United States and is therefore a "vessel of the United States"

within the meaning of 18 U.S.C. §§ 9 and 2273.

In 1980 Congress passed the legislation which became Sections 955a–955d of Title 21 to fill a void created by The Comprehensive Drug Abuse Prevention and Control Act of 1970. That Act inadvertently contained a section repealing the criminal sanctions for drug smugglers apprehended on the high seas. The 1980 legislation was therefore proposed to fill the statutory void and to give the Department of Justice "the maximum prosecutorial authority permitted under international law." S.Rep.No.855, 96th Cong., 2d Sess. 2 (1980) U.S.Code Cong. & Admin.News, p. 2785. The Senate Committee Report recites that the section of the legislation providing definitions, now 21 U.S.C. § 955b(c), was included "in order to insure that these definitions conform to the definitions of such terms in other Federal statutes." *Id.* at 4. We thus look to previously existing maritime legislation to throw light on the meaning of the word "documented" in 21 U.S.C. § 955b(c), defining a "vessel of the United States" to include "any vessel documented under the laws of the United States."

The pertinent legislation to which the Senate Committee must be taken to have been referring relates to ship mortgages. Section 911(4) of Title 46 defines the term "vessel of the United States" to mean "any vessel documented under the laws of the United States and such vessel shall be held to continue to be so documented until its documents are surrendered with the approval of the Secretary of Transportation." Under 46 U.S. § 911(2) the term "documented" means "registered or enrolled or licensed under the laws of the United States, whether permanently or temporarily."

Clearly under these definitions the "Lucky Louise" was "documented" under the laws of the United States as of January 24, 1981. As noted above, as of that date a United States Certificate of Registry for the vessel was issued to one Lawrence Griffith, a citizen and resident of the United States. According to the records there has been no surrender of the vessel's documents with the approval of the Secretary of Transportation. Thus, the vessel "continue[s]" to be "documented." This court therefore concludes that the vessel is a "vessel of the United States" within the meaning of 21 U.S.C. §§ 955a and 955b(c) because it is "documented under the laws of the United States."

Section 955b(c) of Title 21 also defines a "vessel of the United States" to include any vessel "owned" by a citizen of the United States unless it has been "granted nationality" by a foreign nation. The certificate of the vessel's registry in the United States to Lawrence Griffith as of January 24, 1981 shows *prima facie* that the vessel is "owned" by a United States citizen. *St. Clair v. United States*, 154 U.S. 134, 151, 14 S.Ct. 1002, 1009, 38 L.Ed. 936 (1894). The General Index or Abstract of Title maintained by the United States Coast Guard for the vessel shows no conveyances of the vessel after it was transferred to Lawrence W. Griffith by a bill of sale dated December 24, 1980.

Defendants seek to overcome that *prima facie* showing by pointing to the document found on the vessel purporting to show Honduran registry as of August 13, 1980, more than five months prior to the United States registry. This document is not self authenticating. Moreover, the Honduran authorities have certified that the vessel is not registered in Honduras and therefore has not been granted nationality by that country. The vessel is thus "owned" by a citizen of the United States within the meaning of 21 U.S.C. § 955b(c).

What has been said is equally applicable to the contention that the boat is not a "vessel of the United States" within the meaning of 18 U.S.C. § 2273, cited in Count Two of the indictment. For purposes of Title 18 a "vessel of the United States" is defined in 18 U.S.C. § 9 to include a vessel "belonging" to a United States citizen. If a citizen "owns" a vessel it "belongs" to him.

### III

Defendants contend that under international law the United States does not have

subject matter jurisdiction over these events, and that Congress intended Section 955a to go only as far as "permitted under international law." S.Rep.No.855, 96th Cong., 2d Sess. 2 (1980). Both the nationality and protective principles of international law support extraterritorial jurisdiction in this case.

Under the nationality principle the law of the flag a ship is entitled to fly applies to crimes committed on board. *United States v. Flores,* 289 U.S. 137, 155–57, 53 S.Ct. 580, 584–85, 77 L.Ed. 1086 (1933). The state that grants its nationality to a vessel, "thereby accept[s] responsibility for it and acquire[s] authority over it." *Lauritzen v. Larsen,* 345 U.S. 571, 584, 73 S.Ct. 921, 929, 97 L.Ed. 1254 (1953). This rule facilitates order on the high seas.

Even if the vessel has lost the privilege of flying the flag of the United States by a purported transfer to a foreigner or because its master was Newball, a foreign national, 46 U.S.C. §§ 23, 40, 221, the vessel is still "documented" under United States laws and is owned by a citizen of the United States. Since no other country has granted the vessel nationality, the application of a United States criminal statute would facilitate order on the high seas, would not impinge on the sovereignty of another nation, and would thus accord with international law under the nationality principle.

Moreover, under the protective principle a nation may apply its law extraterritorially to conduct "that threatens its security as a state or the operation of its governmental functions, provided the conduct is generally recognized as a crime under the laws of states that have reasonably developed legal systems." *United States v. Pizzarusso,* 388 F.2d 8 (2d Cir.), *cert. denied,* 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968).

Drug smuggling threatens the security and sovereignty of the United States by affecting its armed forces, contributing to widespread crime, and circumventing federal customs laws. *United States v.*

*Egan,* 501 F.Supp. 1252 (S.D.N.Y.1980). It is notorious that vessels like the "Lucky Louise," called mother ships, carry large quantities of marijuana to rendezvous with smaller ships that will transport the substance ashore. The "Lucky Louise" was found 60 miles from Nantucket with nearly twelve tons of marijuana aboard. This made it at least likely that the marijuana on it would enter the country. Under these circumstances the United States may exercise jurisdiction even if the crewmembers did not actually know that the marijuana would enter the United States. *United States v. Angola,* 514 F.Supp. 933 (S.D.Fla. 1981), *citing United States v. Pauth-Arzuza,* No. CR 80–577 (S.D.Fla.1981). *Contra, United States v. James-Robinson,* 515 F.Supp. 1340 (S.D.Fla.1981).

### IV

Defendants further maintain that even if the statutes in question apply, the indictment violates the due process clause of the fifth amendment to the United States Constitution. They maintain that the definitions of the terms "high seas" and "vessel of the United States" in 21 U.S.C. § 955b(b) and (c) are so vague and indefinite that they fail "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

A statute employing technical terms may be sufficiently certain because the terms are "well enough known to enable those within their reach to correctly apply them." *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) (citations omitted). The term "high seas" is a technical one, generally familiar to seamen and thus meeting the notice requirement of the due process clause. *United States v. Angola, supra.*

The term "vessel of the United States" is not so vague as to violate due process. Indeed, the definition of the term is detailed rather than vague. The application of a detailed statute may violate the

notice requirement of due process when it is retroactively expanded by a surprising judicial construction particularly where the conduct construed to be prohibited cannot "be deemed improper or immoral." *Bouie v. City of Columbia,* 378 U.S. 347, 354–55, 362, 84 S.Ct. 1697, 1702–03, 1707, 12 L.Ed.2d 894 (1964). That is not the case here. It is hardly surprising that the United States government would seek to stop drug traffic engaged in by vessels subject to its jurisdiction.

### V

This court finds that the "Lucky Louise," also known as the "Coral I," is "a vessel of the United States" within the meaning of 18 U.S.C. § 2273 and 21 U.S.C. § 955a(a). These sections are within the power of Congress, and their application to defendants does not deprive them of rights under the United States Constitution. The defendants' motion to dismiss the indictment is denied.

So ordered.