UNITED STATES of America,
Plaintiff-Appellee,

v.

David N. WILLIAMS–HENDRICKS,
Defendant-Appellant.

No. 86–2070.

United States Court of Appeals,
Fifth Circuit.

Nov. 19, 1986.

Rehearing and Rehearing En Banc
Denied Dec. 16, 1986.

---

Matias Morin, Jr., Edinburg, Tex., Joseph A. Connors, III, McAllen, Tex., for defendant-appellant.

Susan L. Yarbrough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before JOLLY, HILL and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Appellant David N. Williams-Hendricks (Hendricks) appeals his conviction for four drug-related crimes and alleges that there was insufficient evidence to support his convictions. We find that there is sufficient evidence in the record and affirm these convictions.

I

On September 29, 1985, Hendricks and his son David R. Williams (Williams) arrived at the United States port of entry near Hidalgo, Texas, in a pickup truck. Williams was the driver and Hendricks was the passenger. At the primary inspection area, United States Customs Officer Baldamar Garcia asked Hendricks and Williams about their citizenship. Hendricks replied that he was a resident alien, and displayed a proper card; Williams stated that he was an American citizen. When asked if they had anything to declare, Hendricks said "We don't have anything." He also told Officer Garcia that he and his son were coming from Mexico, after having been in Guatemala and Honduras.

A computer check of the pickup truck's license plate, conducted by Officer Garcia, indicated that the vehicle had not previously been involved in any illegal activity. Moreover, the vehicle was not riding low, nor was any unusual odor emanating from it. Hendricks, however, appeared nervous, and Officer Garcia therefore decided to inspect the rear of the truck, where he found only a few tools in the truck bed. During this time, Garcia noticed that Hendricks was closely watching him and that Hendricks' eyes "got big." Exercising his prerogative, Garcia decided to refer the truck to the secondary inspection station. As Officer Garcia was filling out the referral form and preparing to send Hendricks'

truck to secondary inspection, Hendricks asked him, "Why are you sending us in?"

At the secondary inspection station, Customs Officer Robert Lindsey noticed that Hendricks had left the vehicle and walked toward the immigration building. Hendricks was summoned back to the truck. Lindsey first examined the small amount of luggage that Hendricks and Williams had. Lindsey then looked under the truck and saw that it had two gasoline tanks, which is a common arrangement for that type of vehicle. When Lindsey struck one of the tanks, he heard a metallic ring; when he struck the other tank, he heard a dull thud. When asked what was inside the second tank, Hendricks replied, "I know nothing about it." The gas tank was removed, and upon further inspection was found to contain thirty-eight pounds of tightly compacted marijuana. Both Hendricks and Williams denied any knowledge of the marijuana.

After being arrested and advised of his rights, Hendricks told Agent Allen Tittle of the Drug Enforcement Administration (DEA) that he lived in New Orleans and owned property in Belize, from where he had just returned after a four-month stay. He refused to answer some of the questions asked by Tittle but continued to deny any knowledge of the marijuana.

Hendricks and Williams were charged with one count of conspiracy to import marijuana (Count 1), one count of importing marijuana (Count 2), one count of conspiracy to possess marijuana with intent to distribute it (Count 3), and one count of possession with intent to distribute marijuana (Count 4).

Prior to Hendricks' trial, Williams pled guilty to the two substantive counts of the indictment (Counts 2 and 4). Testifying for the defense at his father's trial, Williams maintained that Hendricks knew nothing about the marijuana. According to Williams, he drove his father's pickup truck to Honduras as part of a convoy of vehicles that Hendricks was going to use in a transportation business he owned in Honduras.

Hendricks flew to Honduras and was not part of the convoy. After they both arrived in Honduras, Williams worked for his father as an automobile mechanic for several months. When Hendricks and Williams decided to return to New Orleans, Williams testified that his father, who could not drive and did not have a driver's license, accompanied him as a passenger because Hendricks had a better command of Spanish and also because it was safer not to drive alone.

Williams testified that on the way to New Orleans, he and his father stopped in Veracruz, Mexico. According to Williams, he left his father in a hotel room and drove off to look for a prostitute. He met a prostitute, asked her if she knew where to get marijuana, and followed her to a house, where three men helped him remove one of the truck's gas tanks. The three men allegedly then filled the tank with marijuana in return for $800. Williams then testified that on the next day he and Hendricks drove the truck to the United States border where the marijuana was discovered. Williams testified that he did not admit his guilt at the time of discovery because he wanted to consult an attorney first.

Hendricks testified in his own behalf that he was a Honduran citizen and resident of New Orleans. He also explained that he owned a transportation business in Honduras that he had purchased with money saved from the twenty years he had spent as a merchant marine engineer. He testified that the pickup in which the marijuana was found had been purchased by his wife in April 1985, but had been transferred to his name shortly thereafter to limit the Honduran entry tax liability. According to Hendricks, both gas tanks worked when the pickup arrived in Honduras but his son had complained to him that one of the tanks was broken before the pair left Honduras. Hendricks testified that he and Williams stayed in separate rooms in Veracruz when they stopped for the night and that he was angry with Williams when the marijuana was discovered. Hendricks denied that his son took the blame for the marijuana so that he would not lose his resident alien card or be deported.

After Hendricks testified, the district court recalled Williams and read into the record the testimony that Williams had given at his plea proceeding. At that proceeding, Williams had indicated that the marijuana was sold to him by people he had met by chance in Mexico City. Williams explained the contradiction between his testimony at his plea proceeding and his testimony at his father's trial by saying he had not meant to say Mexico City in his plea proceeding, but instead had meant to say the state of Mexico. In addition, he indicated that he had not mentioned meeting a prostitute at his plea proceeding because he did not think it was important.

The jury found Hendricks guilty on all four counts. The district court sentenced him to four concurrent four-year periods of imprisonment, 179 days of each to be served concurrently, and the remainder suspended in favor of four years' supervised probation. The court also ordered Hendricks to pay a fine of $1,000.

On appeal, Hendricks claims that there was insufficient evidence to convict him of either the two substantive counts or the two conspiracy counts. We review each of these contentions in turn.

## II

Hendricks was convicted of the substantive counts of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)[1], and of importing marijuana in violation of 21 U.S.C. § 952(a).[2]

1. Count 4 of the indictment charged Hendricks with violating 21 U.S.C. § 841(a). This section provides in pertinent part that:
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

21 U.S.C. § 841(a) (1981). Marijuana is a Schedule I controlled substance.

2. Count 2 of the indictment charged Hendricks with a violation of 21 U.S.C. § 952(a). This section provides in pertinent part that:
   (a) It shall be unlawful to import into customs territory of the United States from any place outside thereof (but within the United

■ In order to sustain a conviction for the crime of possession of marijuana with intent to distribute, the government must prove three elements: (1) knowing (2) possession of marijuana (3) with intent to distribute it. *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982) (quoting *United States v. Richards*, 638 F.2d 765, 768 (5th Cir.), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981)). A conviction on the importation offense requires proof of similar elements, the principal difference being that the government must show that the defendant played a role in bringing the marijuana from a foreign country into the United States. *See United States v. Jonas*, 639 F.2d 200, 205 (5th Cir.1981).

Possession [of contraband] may be actual or constructive, may be joint among several defendants, and may be proved by circumstantial as well as direct evidence. *United States v. Wilson* [657 F.2d 755, 760 (5th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982); *United States v. Stanley*, 765 F.2d 1224, 1240 (5th Cir.1985)]. Constructive possession has been defined as " 'the knowing exercise of, or the knowing power or right to exercise dominion and control over the proscribed substance.' " *United States v. Glasgow*, 658 F.2d [1036] at 1043 [ (5th Cir.1981) ] (*quoting* from *United States v. Marx*, 635 F.2d [436] at 440 [ (5th Cir.1981) ]). One who owns or exercises dominion or control over a motor vehicle in which a contraband substance is concealed may be deemed to possess the contraband. *Id.*; *United States v. Riggins*, 563 F.2d 1264 (5th Cir.1977), *cert. denied*, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978).

*Vergara*, 687 F.2d at 62. In addition, intent to distribute may be inferred from the possession of a large quantity of an illegal substance. *Id.*

Before examining the record to see if there is sufficient evidence to support the convictions, we must be mindful of our role in reviewing the sufficiency of the evidence. "The verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We have stated that

[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc) (footnote omitted), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Under this standard, our review of the record convinces us that there is sufficient evidence to support Hendricks' convictions on the two substantive counts.

■ On the issue of knowledge, the testimony of Officer Garcia indicated that Hendricks was nervous at the Hidalgo port of entry. Nervousness is a normal reaction to circumstances which one does not understand, and being stopped at a border was certainly one of those situations as alleged by Hendricks. Therefore Hendricks' anxiety is inconclusive *unless* viewed in the context of other facts which we are required to consider in the light most favorable to the government. Hendricks and his son set off on a long journey. Hendricks admitted that he knew that one of the gas tanks on his truck was not working at the time they began the trip. Yet Hendricks continued his trip through unsafe and sparsely populated areas, apparently with-

States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug

in schedule III, IV, or V of subchapter I of this chapter....

\*   \*   \*   \*   \*   \*

21 U.S.C. § 952(a) (Supp.1986).

out insisting that his son, a mechanic, repair the tank before proceeding, to assure an ample supply of gas. A reasonable jury could have inferred that Hendricks' failure to insist upon the repair of his own truck under these circumstances at least evidenced deliberate ignorance on Hendricks' part, a factor indicating knowledge of the contraband, especially when considered along with the other evidence.

When initially stopped at the border, Hendricks aroused the suspicion of the guard by his nervous behavior. At the secondary inspection station Hendricks wandered away from the vehicle and moved toward the immigration building. The jury could have considered such behavior as a suspicious reaction to a serious situation. It could also have been significant to the jury that Hendricks' travelling companion, who confessed to the charges of importing marijuana and possessing marijuana with intent to distribute, was his son. The jury could have concluded that it was unlikely that a son would put his father in the position of drug smuggler without his knowledge. Furthermore, a reasonable jury could have concluded that the inconsistent stories given by the son as to where and when he first acquired the marijuana were evidence of the son's trying to conceal his father's knowledge of the contraband. From the combination of the long journey, the obvious mechanical failure of

the gas tank, the father-son relationship, the amount of the marijuana, Hendricks' ownership of the truck, the inconsistent stories of his son, Hendricks' behavior at the inspection station and his obvious lack of credibility in his denials of culpability on the witness stand, we believe that a reasonable jury could infer that Hendricks had knowledge of the marijuana concealed in this truck.

Hendricks, we especially note, owned the truck in which the marijuana was found. As the owner of the truck, Hendricks had control over who used it and how it was used. Hendricks allowed Williams to drive the truck back to the United States and accompanied him on the trip. When considered with the other evidence in this case, control over the vehicle where contraband is found is sufficient evidence by which a jury could infer that Hendricks possessed the marijuana. *See Vergara,* 687 F.2d at 62. The fact that Hendricks' wife originally bought the vehicle is irrelevant; the title to the truck had been transferred to Hendricks prior to the events that led to his arrest at the Hidalgo port. It is who has control or dominion over the vehicle at this latter point, and not the original ownership of the vehicle, that determines whether the jury can infer possession under *Vergara.*[3]

As we noted earlier, *Vergara* also dictates that the jury could infer that Hen-

---

**3.** Hendricks cites three cases to show that there is insufficient evidence to support his conviction. In *United States v. Flores,* 564 F.2d 717 (5th Cir.1977), Flores was a passenger in a pickup that was stopped at a border checkpoint. The driver of the pickup truck sped away from the checkpoint, stopped the pickup and fled. Flores also fled. The evidence against Flores, therefore, was his presence as a passenger in the truck and his flight. This was held to be insufficient. In *United States v. Littrell,* 574 F.2d 828 (5th Cir.1978), Littrell drove a car to the meeting point for a drug transaction. He got out of the car, spoke briefly to one of the participants in the drug deal, and then went into a coffee shop. The participants then took the cocaine out of the car and consummated the drug deal. We noted that there was no evidence that Littrell owned the car, was aware of the cocaine's presence in the car or handled the cocaine at any time. *Id.* at 835. The evidence was held to

be insufficient as to Littrell. In *United States v. Palacios,* 556 F.2d 1359 (5th Cir.1977), Palacios spoke to Garcia shortly before Garcia was arrested for possession of marijuana. Garcia and Palacios had previously been intimate. Palacios was later seen driving past the check point where the marijuana was discovered. Furthermore, an address in Garcia's address book was in Palacios's handwriting. Since the evidence merely showed a close association between Garcia and Palacios, the court reversed Palacios' conviction.

As shown by our discussion above, the evidence establishing knowledge and participation by Hendricks is significantly stronger than we find in the cited cases. Moreover, in this case the evidence is not only sufficient to establish knowledge, but, because of his ownership and control over the vehicle transporting the contraband, possession as well.

dricks intended to distribute the marijuana from the fact that thirty-eight pounds of marijuana were discovered in the truck's gasoline tank. In *Vergara*, we found five ounces of heroin to be a sufficient quantity to allow a jury to infer intent to distribute. In the instant case, thirty-eight pounds of marijuana were confiscated from the vehicle. DEA agent Tittle testified that the contraband would be worth over $13,000. We are satisfied that the jury could infer Hendricks' intent to distribute from the quantity of marijuana seized.

The only additional proof needed for the importation offense is that the government must present evidence that the act would consummate in the United States. *Jonas*, 639 F.2d at 205; *United States v. Mann*, 615 F.2d 668, 671 (5th Cir.1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981). There is no dispute that Hendricks was headed back into the United States and that this country was his ultimate destination at the time of his arrest. The other elements of the importation offense are the same as those needed to prove the offense of possession with intent to distribute. The same evidence that supports the jury's verdict on the latter offense supports the jury's verdict on the importation offense.

Finding sufficient evidence to support the jury's verdict, we affirm Hendricks' conviction on Counts 2 and 4.

### III

We turn now to examine whether there is sufficient evidence to support Hendricks' convictions for conspiracy.[4]

■ In drug conspiracy cases, the government must prove beyond a reasonable doubt that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it.

*United States v. Jackson*, 700 F.2d 181 (5th Cir.), *cert. denied sub nom., Hicks v. United States*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983). It is unnecessary in drug conspiracy cases to prove an overt act in furtherance of the conspiracy. *United States v. Kupper*, 693 F.2d 1129, 1134 (5th Cir.1982).

■ The essence of a conspiracy is "an agreement to violate the narcotic laws." *United States v. Davis*, 666 F.2d 195, 201 (5th Cir.1982). The government need not prove the existence of a formal agreement to establish a conspiracy, but it must do more than "pile inference upon inference upon which to base a conspiracy charge." *United States v. Sheikh*, 654 F.2d 1057, 1063 (5th Cir.1981) (citation omitted), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982). Circumstantial evidence, however, can be used to show the existence of a conspiracy. *United States v. Aguirre Aguirre*, 716 F.2d 293 (5th Cir. 1983); *United States v. Acosta*, 763 F.2d 671 (5th Cir.), *cert. denied sub nom., Weempe v. United States*, —— U.S. ——, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985). Additionally, the agreement between the conspirators may be silent and need not be spoken. "What the evidence in the case *must* show beyond a reasonable doubt is: (1) That two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; ..." *Pattern Jury Instructions: Criminal Cases* (compiled by Committee on Pattern Jury Instructions District Judges Association, Fifth Circuit 1983), 61–62 (conspiracy instruction).

■ Hendricks contends that the government's evidence is insufficient to sustain his conspiracy convictions. He cites the

---

**4.** Counts 1 and 3 of the indictment charged Hendricks with violating 21 U.S.C. § 963 and 21 U.S.C. § 846, respectively. Hendricks' conviction for conspiring to import marijuana into the United States was based on 21 U.S.C. § 963 while his conviction for conspiring to possess marijuana with intent to distribute was based on 21 U.S.C. § 846. Both sections provide that:

> Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. §§ 846, 963 (1981).

fact that guilt of conspiracy cannot be proven solely by familial relationships, *United States v. White,* 569 F.2d 263, 268 (5th Cir.), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1978), or by "mere knowing presence," *United States v. Robertson,* 659 F.2d 652, 656 (5th Cir.1981). Earlier this year, we noted that *White* and *Robertson* are "well-established rules." *United States v. Keller,* 784 F.2d 1296, 1299 (5th Cir.1986). According to Hendricks, the only evidence the jury had to show that he was part of the conspiracy was the fact that he was Williams' father and that he was present with Williams in the truck. Hendricks argues that a conviction on this basis would violate *White* and *Robertson.*

In *White,* we held that the fact that two people were married was insufficient evidence by itself to prove the existence of a conspiracy. In *Robertson,* we held that the fact that a person is present and "surrounded by an active conspiracy" was insufficient evidence by itself to show that the person is part of the conspiracy. *Robertson,* 659 F.2d at 656. Similarly, where the only circumstantial evidence is based on the existence of a family relationship or "mere knowing" presence, a conspiracy conviction cannot be upheld. However, when inferences drawn from the existence of a family relationship or "mere knowing presence" are combined with other circumstantial evidence, there may be sufficient evidence to support a conspiracy conviction. Thus, if the only circumstantial evidence in the record arose from the family relationship or "mere knowing presence," Hendricks' conspiracy convictions would have to be reversed. The record in this case, however, indicates that there is other circumstantial evidence which will support the conspiracy conviction. Consequently, *White* and *Robertson* do not dictate reversal of Hendricks' conspiracy convictions.

▇ That the evidence in this case is sufficient to support a conspiracy convic-

tion is demonstrated by our decision in *United States v. Alfrey,* 620 F.2d 551 (5th Cir.), *cert. denied,* 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 160 (1980), in which we upheld a drug conspiracy conviction challenged by the defendant on the grounds of insufficient evidence. We held that

the probable length of the voyage, inferable from the proximity of the border and the documentary evidence, the large quantity of marijuana on board, which made it indisputable that Alfrey and Haight had knowledge of the marijuana, and the necessarily close relationship between the captain of the trawler and his two man crew were factors from which the jury could reasonably find guilt [of conspiracy] beyond a reasonable doubt.

*See also United States v. Michelena-Orovio,* 719 F.2d 738, 743 (5th Cir.1983) (en banc), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984), (conspiracy conviction upheld on similar facts). As we have earlier discussed, the evidence is sufficient for the jury to infer that Hendricks had knowledge that the contraband was in his truck. Because he owned the truck and exercised dominion and control over the truck, and because of the evidence of his knowledge of the marijuana, it follows that his allowing the truck to be used for the illicit activity resulted from at least a tacit agreement with his son to that effect. Thus it seems to us that the culpable evidence here exceeds that upon which we upheld the conviction in *Alfrey.* Like *Alfrey,* here we have present the factors of the long trip, the large quantity of marijuana, Hendrick's knowledge of the marijuana, and the necessarily close relationship of a father and son traveling a long distance together. In addition, however, the defendant in this case owned, possessed and exercised control over the vehicle transporting the contraband. Therefore we hold that there was sufficient evidence to uphold Hendricks' convictions on the conspiracy counts.[5]

---

5. Hendricks' conviction under 21 U.S.C. § 846 for conspiring to possess marijuana with intent to distribute requires proof of his participation

in a scheme to distribute. In *United States v. Michelena-Orovio,* 719 F.2d 738 (5th Cir.1983) (en banc), *cert. denied* 465 U.S. 1104, 104 S.Ct.

## IV

For the reasons that we have stated in this opinion, we conclude that the evidence was sufficient to uphold the convictions of Hendricks for possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a), importing marijuana in violation of 21 U.S.C. § 952(a), conspiring to import marijuana in violation of 21 U.S.C. § 963, and conspiring to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846. Accordingly, Hendrick's convictions are

AFFIRMED.

ROBERT MADDEN HILL, Circuit Judge, concurring in part and dissenting in part:

I join parts I and II of the majority opinion. I agree with the majority that Hendricks' initial nervousness at the primary inspection station alone is not sufficient to establish knowledge. However, when his nervousness is viewed in the context of his overall conduct at the border, I believe that there is sufficient evidence to allow the jury to infer that Hendricks had knowledge of the marijuana concealed in his truck.

I respectfully dissent, however, from the majority's affirmance of Hendricks' conviction on the conspiracy counts (counts 1 and 3). I agree with the majority that where all of the circumstantial evidence is based on the existence of a family relationship or "mere knowing presence," a conspiracy conviction cannot be upheld. I further agree that White and Robertson do not dictate reversal of Hendricks' conspiracy convictions. I would nevertheless reverse Hendricks' conspiracy convictions because I do not believe that there is sufficient evidence in the record to support Hendricks' conspiracy convictions.

We have stated that we will not "lightly infer a defendant's knowledge and acquiescence in a conspiracy." *United States v.*

Jackson, 700 F.2d 181, 185 (5th Cir.), cert. denied sub nom. Hicks v. United States, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983). A showing that the defendant merely associated with those participating in a conspiracy is insufficient. *Id.* Similarly, the government cannot prove a conspiracy by presenting evidence that only places the defendant in "a climate of activity that reeks of something foul." *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir.1982).

It is important to emphasize that the elements of the crime of conspiracy are different than the elements for the crime of possession of marijuana with intent to distribute or the crime of importing marijuana. While some of the elements of the crimes are identical, the elements must be examined in the context of the particular offense. Consequently, while the jury can make inferences regarding different offenses from the same evidence, the inferences that a defendant had knowledge sufficient to support a conviction on one crime are not necessarily sufficient to support a conviction on another crime. In a conspiracy case, therefore, the knowledge element of a conspiracy offense requires sufficient evidence that proves beyond a reasonable doubt that the defendant knowingly *entered into an agreement* to violate the narcotic laws. In contrast, the knowledge element of the substantive offenses requires evidence that the defendant knowingly *possessed* the marijuana with intent to distribute or import it.

In examining Hendricks' convictions on the substantive counts, it was clear as a matter of law that there was sufficient evidence to show that Hendricks possessed the marijuana, and that he intended to import it into the United States and distribute it. Our previous holdings made it clear that the evidence was sufficient to satisfy the possession, importation, and intent to distribute elements of the substantive crimes. *See Vergara* (possession and in-

1605, 80 L.Ed.2d 135 (1984), we held that once a jury concluded "that the defendant was guilty of conspiring to import marijuana, it was entitled to infer from the quantity [of marijuana] in-

volved that the defendant was also guilty of participation in the conspiracy to possess the marijuana with intent to distribute it." *Id.* at 756–57.

tent to distribute); *Jonas* (importation). On the knowledge element, the evidence that the government presented provided a sufficient basis for the jury to infer that Hendricks understood the nature of his acts.

In examining the evidence on the conspiracy convictions, however, I do not believe the government proved beyond a reasonable doubt that Hendricks and Williams knowingly agreed to violate the narcotic laws. The evidence that the government cites is insufficient in my view to show that there was an agreement between Hendricks and his son to violate the law.

I believe that the inferences that the jury had to draw from the evidence in order to find Hendricks guilty of conspiracy are too attenuated to show that an agreement existed between Hendricks and his son. The majority argues that the jury could infer that Hendricks entered into an agreement with Williams by the fact that Hendricks was never suspicious or asked questions about why gas stops were made so frequently on the way back to the United States when the truck had two fuel tanks. Williams' uncontradicted testimony, however, indicates that he complained to Hendricks before the trip began that one of the gas tanks was not functioning. Thus, Hendricks had no reason to believe that the truck should have stopped less frequently. In addition, the fact that Hendricks accompanied his son on the trip to the United States despite his inability to drive does not indicate the agreement necessary to show that a conspiracy existed. There was evidence that Hendricks accompanied his son on the motor trip back from Honduras because Hendricks had a better command of Spanish and it was safer. There was no evidence which indicated that Hendricks should have been suspicious about his son's explanation for the malfunctioning fuel tank.

Furthermore, unlike the majority, I believe that the fact that Hendricks owned the truck does not show that he knowingly and voluntarily entered into a conspiracy. Although ownership of the truck is sufficient to find that Hendricks had constructive possession in relation to the substantive counts, constructive possession is not sufficient to show the subjective agreement necessary to prove the existence of a conspiracy. While the evidence is sufficient to prove that Hendricks was guilty of the substantive counts, it is insufficient to show an agreement between Hendricks and Williams.

The majority asserts that there had to be "at least a tacit agreement" between Hendricks and his son because Hendricks owned the truck and inferentially had knowledge of the marijuana. This conclusion, however, is obtained only by drawing another inference from the combination of inferences that support Hendricks' convictions on the substantive counts. I believe, however, that these inferences are too attenuated to support a conspiracy conviction.

Nor do I agree with the majority that *United States v. Alfrey*, 620 F.2d 551 (5th Cir.), *cert. denied*, 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 160 (1980), is a factually similar case. In *Alfrey* a ship sailing from the country of Colombia to Tampa Bay, Florida, was stopped and searched after Customs Patrol officers suspected there was marijuana on board. Upon boarding the vessel, they noticed several burnt marijuana cigarettes lying in plain view in the open wheelhouse and a small quantity of marijuana lying on a table in the salon. Upon opening a small hatch, the officers discovered that the trawler was loaded with over 19,000 pounds of marijuana. *Id.* at 554.

The majority, analogizing to *Alfrey*, states that the length of the trip, the quantity of the marijuana, and the "close relationship" of the father and son are sufficient evidence to show that a conspiracy existed. The instant case, however, is much different than *Alfrey*. In *Alfrey*, the conspirators were together for ten days in close quarters. Marijuana was openly left on the decks, and the conspirators were the captain and two crew members on the ship in question. The relationship was necessarily close in order for the trawler to function effectively. It was reasonable for the jury to infer that 19,000 pounds of marijuana could not just get on the ship

without some cooperation from the people on board the trawler. In the instant case, however, Hendricks and Williams traveled together for only a few days. Perhaps the biggest difference between *Alfrey* and the instant case is that while the marijuana was openly displayed on the ship in *Alfrey,* the marijuana in this case was hidden in a fuel tank underneath the truck. Hendricks had no reason to check the fuel tanks; he had already been told by his mechanic son that one of the tanks was malfunctioning. In addition, unlike the working relationship in *Alfrey* that allowed the jury to infer that a conspiracy existed, Hendricks was merely accompanying his son due to his better command of Spanish. There was no reason for him to have an intimate knowledge of his son's activities.

In sum, I do not believe that the government met its burden of proving beyond a reasonable doubt that Hendricks knowingly and voluntarily entered into a conspiracy with Williams. At some point, the inferences from circumstantial evidence become too attenuated as a matter of law to allow a jury to conclude that the government has met its burden of proof beyond a reasonable doubt. In this case, as in *Sheikh, supra* at 502, the government merely "pile[d] inference upon inference."