**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Ramon HERNANDEZ–PALACIOS,
Defendant-Appellant.**

No. 87–1399
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1988.

Miguel Solis, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., Janet E. Bauerle, Lubbock, Tex., for plaintiff-appellee.

Before RUBIN, REAVLEY, and JOLLY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A defendant was convicted by a jury on five counts: two of conspiracy to possess and import marijuana, possession and importation of marijuana, and traveling in interstate commerce to facilitate unlawful activity. He contends that the evidence was insufficient to warrant his conviction on any of the charges, the government presented false and misleading testimony to the jury, and the court gave an erroneous instruction regarding the burden of proof of guilt or innocence. We find the evidence insufficient to warrant the conspiracy convictions or the Travel Act conviction, and reverse the judgment on these counts. The defendant's other claims lacking merit, we affirm the remaining two convictions, and, because the sentences run concurrently, we do not remand.

## I.

The prosecutor offered testimony at trial indicated that, on January 27, 1987, at the Bridge of the Americas border check, at El Paso, Texas, Jose Ramon Hernandez-Palacios was a passenger in one of two buses that sought entry to the United States. Hernandez stated that he was in charge of the buses and, later, that he was the owner. In addition to the drivers of the two buses, two more men were aboard the buses as passengers. An agent questioned the five men about their destination in the United States. The men informed the agents that they had been hired to drive two buses from Guadalajara, Mexico, to pick up a Mexican folk music group, called a Folklorico group, either in Las Cruces or Tucson, Arizona. The agent who boarded the first bus thought it unusual that the men did not know exactly where the Folklorico group would be; he saw no luggage, no toiletries, and no towels and he thought this unusual considering the group's alleged travels and the stated purpose of their trip. He smelled mothballs, which are frequently used to mask the smell of marijuana. He therefore directed both buses aside for further inspections and to question the occupants.

Because the travelers were aliens, they said they expected to remain in the United States for more than 72 hours and their destination in the United States was beyond the 25–mile limit, travel documents were required. Several agents testified that they questioned the men in the secondary inspection area in order to decide whether to issue the documents. Hernandez appeared nervous. He told an agent that he was worried about his money and

**1348**

documents on board one of the buses. The agent permitted him to retrieve a small bag containing these items. The agent also testified that, upon checking the items in the bag, he found $4000 in cash and some receipts that Hernandez indicated were for repairs and painting recently done on the vehicles. The agent further testified that, when he later inventoried the items in the bag, the receipts were no longer there.

Another agent testified that Hernandez told him that an individual named "Elias" had rented the buses to pick up the group, but that Hernandez was unable to tell the agent Elias's last name or how to reach him even though Hernandez had allegedly known Elias for six years. One of the agents made a phone call to the Las Cruces Holiday Inn, where Hernandez had said the Folklorico group was staying, and was informed no such group had registered. The agents therefore intensified their search of the buses.

In searching the buses, agents found panels that they surmised had been worked on recently due to the presence of fresh putty. Upon drilling through the panels in each bus, the agents found marijuana in a hidden compartment. They also found that tanks had been installed inside the diesel fuel tanks of the two buses and these tanks contained marijuana. A search of both buses also yielded bags of gray putty, a package of rivets, and a cordless drill with screw bits.

The government also called as a witness W.D. Russell, who was a service center manager for Greyhound Bus Lines and had been a bus mechanic for 30 years. Russell testified that he had examined the two buses on the weekend before the trial, and that based on the condition of the radiators, tires, and fuel systems, his opinion was that the buses could not have been driven from Guadalajara to El Paso without stopping for additional fuel.

The trial court denied Hernandez's motion for judgment of acquittal but granted the motions made by the four codefendants. The jury convicted Hernandez on all five counts of the indictment, and the court sentenced him to serve ten years on each of four of the counts and five years on the Travel Act count, all to run concurrently, a special parole term of eight years on the substantive marijuana counts, and a $250 fine.

## II.

In evaluating the sufficiency of the evidence on appeal, the reviewing court must consider the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices.[1] The standard is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

### a. *Conspiracy to import and conspiracy to possess*

 In a drug conspiracy prosecution under 21 U.S.C. §§ 846 and 963, the government must prove beyond a reasonable doubt that a conspiracy existed, the accused knew of the conspiracy, and he knowingly and voluntarily joined it.[3] No evidence of overt conduct is required.[4] A conspiracy agreement may be tacit, and the trier of fact may infer agreement from circumstantial evidence.[5] This court, however, will not lightly infer a defendant's knowledge of and acquiescence in a conspiracy.[6] Although all of a defendant's alleged coconspirators are acquitted, the

---

**1.** *Glasser v. U.S.*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *U.S. v. Nixon*, 816 F.2d 1022, 1029 (5th Cir.1987).

**2.** *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *U.S. v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

**3.** *U.S. v. Williams-Hendricks*, 805 F.2d 496, 502 (5th Cir.1986); *U.S. v. Jackson*, 700 F.2d 181, 185 (5th Cir.), *cert. denied*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983).

**4.** *Williams-Hendricks*, 805 F.2d at 502.

**5.** *Jackson*, 700 F.2d at 185.

**6.** *Id.*

defendant may be convicted of conspiring with other unknown persons if the indictment asserts that other such persons exist and the evidence supports their existence and the existence of a conspiracy.[7]

■ In this case the four codefendants were acquitted of the conspiracy charge. While the indictment alleged that there were other unknown conspirators, the evidence does not support the existence of any agreement or of any other conspirators with whom an agreement might have been reached. While the government asks us to suppose that there may have been two other coconspirators, namely the "Elias" who leased the bus services and Hernandez's brother, who Hernandez said at one point owned one of the buses, the government's theory of the case at the trial strongly implied that no "Elias" actually existed at all. Furthermore, even if there was a person named "Elias" or one for whom this was a pseudonym, and even if Hernandez's brother owned one of the buses, these two single facts are not sufficient to permit the conclusion beyond a reasonable doubt that they together with Hernandez were members of a conspiracy to possess or import marijuana. Because of the insufficient evidence of any agreement, the trial court should have granted Hernandez's motion for judgment of acquittal on the two conspiracy counts.

b. *Possession and Importation*

■ A possession conviction requires proof that a defendant had knowing possession of marijuana with the intent to distribute it.[8] An importation conviction requires proof of similar elements, along with the additional proof that the defendant played a role in bringing the marijuana from a foreign country into the U.S.[9] Possession may be actual or constructive, and may be proved by circumstantial evidence.[10] One who owns or exercises control over a motor vehicle in which contraband is concealed may be deemed to possess the contraband.[11] Intent to distribute may be inferred from the possession of a large quantity of contraband.[12]

■ The evidence was sufficient to convict Hernandez on both the possession and importation counts. His nervous behavior and the disappearance of the receipts that evidenced recent repairs to the buses, together with his statement that he was owner of and in charge of the buses on which the contraband was found, and the evidence that the buses could not have traveled from Guadalajara to the border without frequent stops for fuel when—absent the marijuana tanks—the fuel supply would have been ample for such a trip, all taken together, suffice to warrant the inference that he knowingly had possession of the marijuana. The large quantity found, over 1000 pounds, sufficiently evinces an intent to distribute.[13]

The only additional requirement for an importation conviction is proof that the act would be consummated in the United States. Hernandez clearly played a role in bringing the marijuana across the border from Mexico into the United States. The fact that he was crossing the border with a quantity of marijuana sufficient for the jury to infer intent to distribute supports the conclusion that the distribution was to occur inside the United States.

Thus there was sufficient evidence to permit the factfinder to conclude that Hernandez was guilty of both possession and importation of marijuana.

---

7. *U.S. v. Sheikh*, 654 F.2d 1057, 1062 (5th Cir. 1981), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982).

8. *Williams-Hendricks*, 805 F.2d at 500.

9. *Id.; U.S. v. Jonas*, 639 F.2d 200, 205 (5th Cir. 1981).

10. *U.S. v. Vergara*, 687 F.2d 57, 62 (5th Cir. 1982).

11. *Williams-Hendricks*, 805 F.2d at 500; *U.S. v. Glasgow*, 658 F.2d 1036, 1043 (5th Cir.1981).

12. *Williams-Hendricks*, 805 F.2d at 500 (citing *Vergara*, 687 F.2d at 62).

13. *See Williams-Hendricks*, 805 F.2d at 502.

### c. Travel in foreign commerce to facilitate unlawful activity

■ Conviction under 18 U.S.C. § 1952 requires proof of (1) travel in interstate or foreign commerce, (2) specific intent to promote, manage, establish, carry on, or distribute the proceeds of "unlawful activity", and (3) knowing and willful commission of an act in furtherance of that intent subsequent to the act of travel.[14] The term "unlawful activity" means "any business enterprise involving ... narcotics or controlled substances...."[15] "Business enterprise" means a continuous. course of conduct, as opposed to sporadic casual involvement in a proscribed activity.[16]

The evidence of business enterprise or of an act subsequent to travel was insufficient to convict Hernandez under the Travel Act. In *Carrion,* this court found sufficient proof of an enterprise based on evidence of three deliveries of cocaine and proof that the defendant had distributed cocaine in the past. In this case, however, there was no evidence to indicate a continuous course of conduct. Hernandez was not linked to any continuous scheme or distribution enterprise. Furthermore, Hernandez cannot be said to have committed an act in furtherance of the unlawful activity *subsequent to* the act of travel since he was detained during the very act of travel. Thus, the evidence of a § 1952 violation was insufficient to support Hernandez's conviction on that count.

### III.

■ Hernandez also contends that the prosecution should be either barred or "reversed" because the testimony of government witness Russell was false and misleading. Hernandez argues that the testimony was false and deceiving because Russell's opinions as to the condition of the

buses were based on an examination he conducted after the buses had been in custody for three months. Hernandez also argues that Russell's position as a Greyhound mechanic did not qualify him to render an opinion as to the buses in this case.

■ Hernandez's contentions regarding Russell's testimony are without merit. Hernandez offers no proof that any testimony was actually false. The fact that the government's testimony differed from that presented by Hernandez does not render it false or misleading. Russell testified that he had examined the buses on the weekend before the trial. The court instructed the jury that it could assign whatever weight it thought the various opinions given in the case deserved. Determinations regarding the weight of the evidence and the credibility of witnesses are the sole province of the jury.[17] That the jury chose to credit Russell's testimony cannot serve as a reason to bar or reverse the prosecution in this case. Russell's credentials, based on experience, were sufficient to warrant his justification as an expert.[18]

### IV.

■ Hernandez also contends that the court gave an erroneous instruction when it told the jurors that their duty was to determine the guilt or innocence of the accused. Hernandez argues that this instruction fails to indicate that the jury should presume innocence unless the defendant were proved guilty beyond a reasonable doubt, and that the instruction may have caused the jury to think that Hernandez had the burden of proving his innocence.

Because he did not object at the trial, Hernandez necessarily challenges this instruction as plain error under Fed.R.Crim. P. 52(b). To constitute such plain error,

---

**14.** *U.S. v. Carrion,* 809 F.2d 1120, 1127 (5th Cir.1987) (citing *U.S. v. Cauble,* 706 F.2d 1322, 1351 (5th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984)).

**15.** 18 U.S.C. § 1952(b).

**16.** *Carrion,* 809 F.2d at 1127 (citing *U.S. v. Davis,* 666 F.2d 195, 202 n. 10 (5th Cir.1982)).

**17.** *U.S. v. Martin,* 790 F.2d 1215, 1219 (5th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986) (quoting *U.S. v. Davis,* 752 F.2d 963, 968 (5th Cir.1985)).

**18.** Fed.R.Evid. 702.

the error must have been so fundamental as to have resulted in a miscarriage of justice.[19] The instruction was not so flawed. The instruction on determination of guilt or innocence appears to be a commonly given construction.[20] Furthermore, the trial court did instruct the jury that the defendant is presumed innocent and does not have to prove his innocence. Thus, the instruction did not constitute plain error.

### V.

For these reasons, the judgment is AFFIRMED insofar as the conviction on Counts 2 and 4. Insofar as it adjudges guilt on counts 1, 3, and 5, it is REVERSED. The sentences on the latter two counts having been concurrent with sentences on the affirmed counts, resentencing is not necessary. A copy of this opinion is, however, to be attached to the judgment so that prison authorities and the parole board will have accurate information concerning the offenses for which Hernandez was convicted.

---

**19.** *Cunningham v. Healthco, Inc.,* 824 F.2d 1448, 1464 (5th Cir.1987) (quoting *Whiting v. Jackson State Univ.,* 616 F.2d 116, 126 (5th Cir.1980)).

**20.** *See, e.g., Penry v. Lynaugh,* 832 F.2d 915, 919–20 (5th Cir.1987); *King v. Lynaugh,* 828 F.2d 257, 263 (5th Cir.1987); *United States v. Williams,* 775 F.2d 1295, 1299 (5th Cir.1985), *cert. denied,* 475 U.S. 1089, 106 S.Ct. 1477, 89 L.Ed.2d 732 (1986).