**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mack Allen RICHARDSON,
Defendant-Appellant.**

No. 87–1671.

United States Court of Appeals,
Fifth Circuit.

June 21, 1988.

---

Hal E. Turley, Dallas, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Mack Allen Richardson (Richardson) was charged in a three-count indictment with conspiracy to possess more than 500 grams of cocaine with intent to distribute it, contrary to 21 U.S.C. §§ 841(a)(1) and 846, possession of more than 500 grams of cocaine with intent to distribute it, contrary to 21 U.S.C. § 841(a)(1), and interstate travel in aid of illegal activities, contrary to 18 U.S.C. § 1952. Following a bench trial, Richardson was acquitted of the conspiracy count and convicted on the other two counts. He was sentenced to twelve years' confinement, plus four years' supervised release, on the possession with intent to distribute count and to a consecutive three-year term on the Travel Act count. Richardson appeals, complaining of the denial of his motion to suppress the cocaine discovered in the search of the car he was driving and asserting that the evidence is insufficient to support his conviction.

■■ The search in question was conducted at the Sierra Blanca checkpoint on January 6, 1987, several months prior to our August 17, 1987 decision in *United States v. Jackson*, 825 F.2d 853 (5th Cir.1987) (en banc), *cert. denied sub nom. Ryan v. United States*, —— U.S. ——, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988), *cert. denied sub nom. Browning v. United States*, —— U.S. ——, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988) (*Jackson II*). As *Jackson II* makes clear, when the search involved here was performed, our cases treated the Sierra Blanca checkpoint as the functional equivalent of the border. The instant search was plainly proper under those standards. *Id.* See also, e.g., *United States v. Dreyfus-de Campos*, 698 F.2d 227 (5th Cir.1983). Richardson contends that we should suppress the fruits of his pre-*Jackson II* search on the basis of our holding in *Jackson II* that the Sierra Blanca checkpoint is *not* the functional equivalent of the border. However, *Jackson II* specifically rejected that approach, and refused to suppress the

fruits of the searches there involved as they were conducted in accordance with the law as then reflected by our decisions. 825 F.2d at 865–66. We are bound by *Jackson II.* See, e.g., *United States v. Morgan,* 835 F.2d 79, 81 (5th Cir.1987). We reject Richardson's complaints respecting the denial of his motion to suppress.

With respect to count three, the Travel Act count, the government, with commendable candor, concedes that the evidence is insufficient under our recent decision in *United States v. Hernandez-Palacios,* 838 F.2d 1346, 1350 (5th Cir.1988). This concession does not appear to be improvident. We accordingly reverse the conviction and sentence on count three, and order that count dismissed.

The sole remaining issue in the case relates to the sufficiency of the evidence on count two, charging possession of more than 500 grams of cocaine with intent to distribute it. On appellate review, the test for evidential sufficiency is whether "any substantial evidence" supports the finding of guilty and "whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty." *United States v. Jennings,* 726 F.2d 189, 190 (5th Cir.1984). For this purpose, "we must consider the evidence in the light most favorable to the government." *United States v. Niver,* 689 F.2d 520, 529 (5th Cir.1982). We must likewise "defer[ ] to reasonable inferences of fact drawn by the trial court." *United States v. Reeves,* 782 F.2d 1323, 1326 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986). "Moreover, whether the evidence is direct or circumstantial, the scope of our review remains the same." *United States v. Lorence,* 706 F.2d 512, 518 (5th Cir.1983).

■ The elements of the section 841(a)(1) offense charged in count two are that the defendant (1) knowingly (2) possessed over 500 grams of cocaine (3) with intent to distribute it. *See United States v. Williams-Hendricks,* 805 F.2d 496, 500 (5th Cir.1986). Here the only real dispute is over the sufficiency of the evidence concerning the first element, defendant Rich-

ardson's knowledge. Although the question is arguably close and the evidence is not compelling, we conclude that it is sufficient to support the district court's guilty finding.

The government's evidence showed that on January 6, 1987, at approximately 7:00 p.m., Richardson was traveling alone in a 1986 four-door Oldsmobile, headed in an easterly direction on Interstate Highway 10, when he stopped at the Sierra Blanca checkpoint approximately seventy-five to eighty-five miles southeast of El Paso, Texas. The Border Patrol agent then on duty testified that when Richardson drove up to the checkpoint, the agent identified himself and asked Richardson to state his citizenship, to which Richardson responded that he was American. The agent then asked Richardson where he was coming from, and Richardson responded Los Angeles, California. Although the agent had not asked him about it, Richardson thereupon volunteered that the car was a rental car and was not his, and started to reach for the glove compartment to get the papers out to show the agent it was a rental car. At that point, the agent observed that Richardson was "very uneasy, he wouldn't look at me, he wouldn't maintain any type of eye contact with me." Not wanting Richardson to reach in the glove compartment, the agent asked if he would mind opening the trunk. Richardson said he did not have a key to the trunk. The agent requested him to pull into the secondary inspection area, and Richardson did so, the agent accompanying him on foot. The agent then asked him to step out of the car, which Richardson did. Then, as the agent testified, "he repeated himself, telling me that it was a rental car ... that it was rented by a friend, that he was driving it for a friend."

A search of Richardson's person and the inside of the vehicle failed to locate a key to the trunk. The agent then removed the back seat and was able to access the trunk, from which he retrieved a package six or seven inches long wrapped in brown masking tape. Making a small cut in this package revealed it to contain what appeared to

be cocaine. Later the trunk lid was forced open and more similar packages were retrieved. They were later tested and found to contain 985 grams of cocaine, of which approximately 567 grams were eighty-seven percent pure, with the balance being eighty-four percent pure. Richardson had some clothes on the back seat of the car. There were also some clothes in the trunk, but there was no evidence as to whether or not the clothes in the trunk were Richardson's. The initials "T E" were on some of the cocaine packages.

The Border Patrol agent then arrested Richardson and called the Drug Enforcement Administration (DEA). Later that evening, Special Agent Hanna, who had fifteen years' experience with the DEA, interviewed Richardson, after fully warning him of his rights. Hanna testified that Richardson told him that he had flown from Dallas to Los Angeles on the morning of January 5 to visit his ill mother. Richardson told Hanna that about four or five o'clock in the afternoon on January 5, while in Los Angeles, he "ran into" a female whose first name was Rhonda, whom he had known for four or five years but whose last name he did not recall. He told her he did not have enough money to fly back to Dallas, had no identification on him and no driver's license, and "so he asked Rhonda to rent him a car." He told Hanna that "later that evening someone dropped off a car in front of his mother's house and dropped the key to it through the mail slot." Richardson then got up at two o'clock in the morning on January 6, got in the car and drove it back toward Dallas, and was eventually stopped at the Sierra Blanca checkpoint. Richardson advised Hanna that he intended to turn the car back in Dallas to Avis Rent-a-Car.

The rental agreement and deposit receipt covering the car Richardson was driving, which were found in its glove compartment, were introduced in evidence. These documents reflect that the car was rented by National Car Rental System in Los Angeles at its Airport Boulevard office "Serving L.A. Int'l Airport." The vehicle was rented at 8:09 p.m. on January 5, 1987. The party renting the vehicle was "Cassandra Rodney," and the rental charge was twenty cents a mile (with a hundred miles a day allowed) and $65 a day. The agreement reflected that the car would be turned in at Love Field, Texas. A cash deposit of $370 was made on the car by Cassandra Rodney. When he was arrested, Richardson had on his person $130 cash and the customer's copy of his Dallas to Los Angeles airlines ticket, which reflected a cost of $190.

Agent Hanna also testified that cocaine of the high degree of purity of that found here is usually used for distribution at the wholesale level so it can be further diluted and sold to the consumer. He also testified that the quantity involved "would be quite a few months' supply" and that "it is certainly not for personal consumption." [1]

The defense presented no evidence.

The fact that Richardson had exclusive possession of the car, driving it alone on a trip of over a thousand miles, is some evidence from which it might ordinarily be inferred that he was aware of the some two pounds of cocaine in the wrapped packages sitting in the trunk. We have stated that *"[c]onstructive possession is* the knowing exercise of, or the *knowing power* or right *to exercise, dominion and control* over the proscribed substance," *United States v. Marx,* 635 F.2d 436, 440 (5th Cir.1981) (emphasis added), and that *"[c]onstructive possession may be shown by* ownership, dominion or control over the contraband itself, or dominion or *control over* the premises or *the vehicle in which the contraband was concealed." United States v. Salinas-Salinas,* 555 F.2d 470, 473 (5th Cir.1977) (emphasis added).[2] Read together, these two statements suggest

---

1. Given the quantity and purity of the cocaine, and Agent Hanna's testimony about it, it is clear that the district court could properly infer an intent to distribute. *See, e.g., United States v. Williams-Hendricks,* 805 F.2d at 501–02. Indeed, Richardson does not contend otherwise or challenge the sufficiency of the evidence in this particular respect.

2. *See also United States v. Vergara,* 687 F.2d 57, 61–62 (5th Cir.1982); *United States v. Morena,* 649 F.2d 309, 312 (5th Cir.1981).

that *knowledge* of the presence of the contraband may ordinarily be inferred from the exercise of control over the vehicle in which it is concealed. We have allowed such an inference against the driver where the contraband is in a vehicle compartment at least as inaccessible to (and concealed from) the driver as was the interior of the Oldsmobile's trunk to Richardson here. *United States v. Moreno*, 579 F.2d 371 (5th Cir.), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1978). In other hidden compartment cases, however, we have hesitated to rely *solely* on control of the vehicle, even over an extended trip, and our affirmance of conviction has been influenced by such additional factors as the suspicious nature of the trip and circumstances evidencing a consciousness of guilt on the part of the defendant. *See, e.g., United States v. Del Aguila-Reyes*, 722 F.2d 155, 157–58 (5th Cir.1983); *Williams-Hendricks*, 805 F.2d at 500–01. In *Aguila-Reyes*, we felt that driving new Toyotas from Miami to Guatemala, and returning to Miami to pick up more for similar overland delivery, was inherently suspicious; and in *Williams-Hendricks*, we similarly viewed setting off on a long journey through an unsafe and sparsely populated area with one gas tank (in which the contraband was ultimately found) known not to be working.

Here, the circumstances of the trip are clearly suspicious, to say the least. The car is left with Richardson without any announcement whatever except dropping the ignition key through the mail slot. Though Richardson is to take a trip of over one thousand miles, he is not furnished a trunk key for this newly rented car. He does not even know the last name of his benefactor, who is for some inexplicable reason willing to furnish him a car to drive to Dallas that requires a $370 cash deposit and costs her far more than it would to lend him the $60 he would need to buy his

return ticket, all without requiring Richardson, who had told her he did not have a driver's license or other identification with him, to even sign a receipt or similar document for the vehicle. There is also inherent implausibility in Richardson's flying to Los Angeles to see his sick mother without enough money to return, and then leaving at two o'clock the next morning in the mysterious rent car.

Moreover, Richardson's nervousness when going through the fixed checkpoint, and his immediate volunteering, without having been asked, that the car was rented and was not his, are likewise suggestive of guilty knowledge. *See Moreno*, 579 F.2d at 372; *Williams-Hendricks*, 805 F.2d at 501 (nervous behavior at inspection station). *See also United States v. Trevino*, 560 F.2d 194 (5th Cir.1977). *Cf. Aguila-Reyes*, 722 F.2d at 158 (driver's lack of concern or surprise *after* being told that narcotics had been found in vehicle); *id.* (dissenting opinion, recognizing that "[n]ervousness is frequently used as evidence of guilty knowledge"). Further, Richardson's story about the car changed somewhat in the telling. Initially, he informed the Border Patrol agent he was "driving it *for* a friend" (emphasis added), while later he told DEA Agent Hanna that the friend furnished him the car in response to his *request* to her for a rent car to drive home since he did not have enough money to buy a return ticket.

Finally, Richardson's essentially uncorroborated[3] explanation for his use and possession of the automobile and lack of a trunk key is so inherently implausible as to justify the inference that it was largely fabricated. We have indicated that "a less-than-credible explanation" is "part of the overall circumstantial evidence from which possession and knowledge may be inferred." *United States v. Phillips*, 496 F.2d 1395, 1398 n. 6 (5th Cir.1974).[4] *Cf.*

---

3. It is true that the rental contract and receipt showed that the car *was* a rent car. But such corroboration is akin to that the late Judge Hutcheson, formerly Chief Judge of this Court, referred to respecting the individual who reported seeing a ghost eating off a plate and vouched for his story by producing the plate.

4. The same authority indicates that this "alone" is not enough for conviction "[a]bsent other and sufficient indicia of possession." *Id.* That statement, however, was made in the context of a defendant *passenger* in a car rented by a co-defendant, the passenger not having been shown to have been alone in the car or have had

*Wilson v. United States,* 162 U.S. 613, 16 S.Ct. 895, 896, 899, 40 L.Ed. 1090 (1896) (defendant, pretrial and on the stand, gave "explanations of the appearances against him" which "were inadequate and improbable"; Supreme Court observes in this regard that "fabrication of evidence undoubtedly gives rise to a presumption of guilt, to be dealt with by the jury"); *United States v. Wood,* 550 F.2d 435, 442–43 (9th Cir. 1976); *United States v. Rajewski,* 526 F.2d 149, 158 (7th Cir.1975); *McCormick on Evidence* § 273 at 808 & n. 2 (3d ed., Cleary, 1984); 2 *Wigmore on Evidence* § 278(2) at 136 n. 3 (Chadbourn rev. 1979).

Richardson relies primarily on our opinion in *United States v. Tolliver,* 780 F.2d 1177 (5th Cir.1986), *remanded on other grounds,* —— U.S. ——, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987). There we expressed concern respecting "the paucity of evidence indicating awareness by either Scott or Onick of the contraband's presence in a vehicle they did not own and were not shown to have controlled for more than a brief period." *Id.* at 1184. The evidence did not show the *amount* of contraband in the vehicle, and hence we held it insufficient to support the conviction of possession *with intent to distribute. Id.* We remarked, however, that "[h]ad the government proceeded against Scott and Onick on a simple possession charge, it might have succeeded." *Id.* Here, of course, the government *did* adequately prove the quantity of contraband and the intent to distribute. *See* note 1, *supra,* and accompanying text. Moreover, Richardson's exclusive possession and control for a lengthy time and over a great distance contrast markedly with the "brief period" of mostly nonexclusive control involved in *Tolliver.* We conclude that the concern expressed in *Tolliver* is not applicable to these quite different facts.

In the nature of things, proof that possession of contraband is knowing will usually depend on inference and circumstantial evidence. "Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral·coincidences, be sufficient to constitute conclusive proof." *Coggeshall v. United States (THE SLAVERS),* 69 U.S. (2 Wall.) 383, 17 L.Ed. 911, 914–15 (1865). The proof here is certainly not "conclusive," but we deem it, taken as a whole, to constitute substantial evidence and to authorize a reasonable trier of fact to conclude that Richardson's guilt was established beyond a reasonable doubt. Moreover, nothing in this record suggests to us that Richardson has been unjustly convicted. Accordingly, the conviction and sentence on count two are affirmed.

### Conclusion

The conviction and sentence on count three, charging violation of 18 U.S.C. § 1952, is reversed and that count is ordered dismissed. The conviction and sentence on count two, charging violation of 21 U.S.C. § 841(a)(1), is affirmed.

AFFIRMED in part and REVERSED in part.

GOLDBERG, Circuit Judge, specially concurring:

The current law in this circuit would not have permitted the border patrol agent's unconstitutional search of the rented automobile driven by defendant Richardson. *See United States v. Jackson,* 825 F.2d 853 (5th Cir.1987) (en banc), *cert. denied sub nom. Ryan v. United States,* —— U.S. ——, 108 S.Ct. 711, 98 L.Ed.2d 661, *cert. denied sub nom. Browning v. United States,* —— U.S. ——, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988). We cannot, however, suppress the evidence obtained in that unconstitutional search because, at the time of the search, the decisions of this court specifically permitted the now admittedly unconstitutional search. *See Jackson,* 825 F.2d at 865–66 (citing *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1984); *Illinois v. Krull,* 480 U.S.

---

possession of its keys. *Id.* at 1397–98. Here, by contrast, Richardson had had exclusive, sole possession and control of the car for at least seventeen hours on a more than one thousand mile trip.

340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987)). To quote my esteemed Brother Rubin, concurring specially in the *Jackson* decision, "I would, if not bound by Supreme Court precedent, reach a contrary decision as to the suppression of the evidence in this case." *Id.* at 872–73.